## EVARTS *against* THE KILLINGWORTH MANUFACTURING COMPANY.

A corporation, established under the statute relating to joint stock corporations, for manufacturing purposes, passed a by-law, providing, that a president, secretary, and treasurer, should be chosen annually, and should hold their offices until others should be chosen in their stead.   The corporation carried on its business in the town of *K*, for some time, when, being unsuccessful, it disposed of all its property, and closed its business, without the intention of resuming it, except for the purpose of collecting and paying out moneys, and holding a meeting of the stockholders.   At a meeting subsequently held, all the stockholders, except *G*, transferred to him all their shares of stock, and all the officers, including *N*, the secretary, resigned their offices ; which resignations were accepted.   These transfers of stock and resignations were made, for the purpose and with the intention of preventing the bringing of any suit, or the legal service of any writ or process, against said corporation.   A writ

against such corporation was soon afterwards served, by attaching its property, and leaving copies with *N*, as secretary, and *G*, as president, who had held those offices, respectively, up to the time of said resignations. On a plea in abatement, for want of legal service, it was held, 1. that said transfers of stock and resignations, having been fraudulently made, had no efficacy to prevent service, and consequently, the leaving of a copy with *N*, was sufficient; 2. that if otherwise, the leaving of a copy with *G*, the only stockholder, would probably be deemed sufficient.

A corporation does not become extinct, as such, by the resignation of its officers, and the omission to elect others.

Nor would the mere disuse of its corporate powers, have that effect.

As to the effect of the last official acts of an out-going secretary or clerk.

THIS was an action on promissory notes.

The officer, who served the writ, stated, in his return, that he attached all the right, title and interest, of the *Killingworth Manufacturing Company*, in certain real estate, particularly described, and that he left a true and attested copy of the writ, with his doings thereon endorsed, in the hands of *Nathan Griswold*, president and director of said *Killingworth Manufacturing Company*, and within his dwelling-house in *Killingworth ;* and on the same day, he left a true and attested copy of the writ, in the hands of *William C. Nettleton*, director and secretary of said company, with his doings thereon endorsed ; and on the same day, he left a like copy at the town-clerk's office in *Killingworth*.

In the county court to which the writ was returnable, the defendants pleaded in abatement, alleging, that said writ was not served upon said company, by leaving a true and attested copy of said writ, by a proper officer, with any one, who, at the time of said service, was the secretary of said company ; nor was said writ so served, by leaving any such copy with any one who was a member of said company, at the time of such service, except that such copy was left with *Nathan Griswold*, by the officer who served the same ; and also a like copy was left, in like manner, with *William C. Nettleton ;* who were not, either of them, secretary of said company, at the time of such service ; nor was such copy left, in like manner, with any one, who, at the time of such service, was secretary of said company ; nor had said company any secretary, at the time of such service ; nor was any such copy left, by the officer who served the same, at the factory of said company ; nor at their manufacturing house, or other place, where said corporation transact their business, or exer-

cise their corporate powers, according to the statute in such cases provided.

*Middlesex,*
*July, 1850.*

*Evarts*
*v.*
Killingworth
Manuf. Co.

To this plea the plaintiff replied, alleging, 1. That the writ was duly served, on the 22d day of *March,* 1849, by the sheriff of *Middlesex* county, by leaving a true and attested copy, with his doings thereon endorsed, with *William C. Nettleton,* of *Killingworth,* at his dwelling-house in said town, who, at the time said copy was so left in service, was the secretary of said *Killingworth Manufacturing Company.*

2. That said writ was also duly served on said corporation, by said sheriff, by leaving a true and attested copy thereof with said *Nathan Griswold,* at his dwelling-house, who, at the time said copy was so left in service, was the sole owner of all the shares, and capital stock and property of said corporation, and the only person in any manner interested therein, and was then president of said corporation; and when said copy was so left in service, and for a long time before and ever since, there was and is no place where said corporation transacted its business, or exercised its corporate powers.

3. That on the 15th day of *March,* 1849, and previous to the time when the plaintiff's writ was served, said *Nathan Griswold,* and *William C. Nettleton,* and *Reuben K. Hinckley,* were members and stockholders, and the only members or stockholders of or in said corporation; that during all that time, said *William C. Nettleton,* was secretary of said company; that said *Griswold, Hinckley* and *Nettleton,* well knowing of the just debt and claims of the plaintiff against said corporation, but contriving and intending to cheat and defraud the plaintiff, and to obstruct and prevent him from suing for and collecting his said just debt and claims, and with intent to render it impossible to make service of the plaintiff's writ, or of any other writ or process in his favour, or in favour of other creditors of said corporation, against them, the defendants, in any way, did then and there, to wit, on said 15th day of *March,* 1849, at said *Killingworth,* wrongfully, injuriously, and fraudulently, confederate and combine together, to cause said *William C. Nettleton* to convey and transfer all his said capital stock and interest in said company to the said *Griswold,* and to resign his said office of secretary of said corporation: and that in pursuance of said wrongful and fraudulent design, said *William C. Nettleton,* on said 15th of

*Middlesex,*
*July, 1850.*

Evarts
*v.*
Killingworth
Manuf. Co.

*March,* 1849, conveyed and assigned all his capital stock and interest in said company to said *Griswold ;* and did, in pursuance of said design, and with a fraudulent intent as aforesaid, on or about the said 15th of *March,* 1849, resign his said office of secretary of said company and corporation. And that since his said resignation, said *Griswold, Hinckley* and *Nettleton,* and said corporation, have, with the same fraudulent intent and design, wholly neglected and refused to appoint a secretary of said corporation.

4. That said sheriff, on the 22d day of *March,* 1849, left in service a true and attested copy of said writ, with his doings thereon endorsed, at and within the dwelling-house of said *Nathan Griswold,* at said *Killingworth ;* and if there was, at that time, any place where said corporation transacted its business, or exercised its corporate powers, it was the place where said copy was so left, and not elsewhere.

These allegations were traversed by the defendants ; on which issue was joined.

The court found the issue in favour of the plaintiff ; and thereupon rendered judgment, that the defendants *answer over.* From this judgment the defendants appealed to the superior court, in which the same issue, joined, by agreement of parties, to the court, was tried, *February* term, 1850. The court thereupon found the following facts.

Several persons having, in the year 1848, associated together, under the act then in force, relating to joint stock corporations, for the purpose of carrying on the business of making and selling paper, and having complied with the provisions of that act, were organized and established as a corporation, for the purpose of carrying on said business, under the name assumed by them in their articles of association, *viz. The Killingworth Manufacturing Company ;* which is the corporation, defendant, in this case. This corporation, soon afterwards, ordained and established, among others, a by-law, in the words following, *viz.* " Art. 11. The officers of the corporation, shall be chosen annually, and shall consist of not less than three, nor more than five directors, with the powers named in said act, a president, secretary and treasurer, who shall hold and discharge the duties of their offices severally, until others shall be chosen in their stead." The corporation subsequently commenced, and thereafter continued, to carry

on said business, in *Killingworth*, until some time afterwards, when, having been unsuccessful in business, it sold and disposed of all its property, of every description, including the factory buildings, store and mill, and the real estate connected therewith, in *Killingworth;* which was its principal place in this state of transacting its business, while it continued to do business; and from thenceforth, without any intention of resuming it, wholly ceased to occupy or use said property, for any purpose. It wholly ceased to do any business, except that it subsequently collected in the moneys due to it, and paid them out to the creditors of the corporation, or some of them; and except also the holding of the meeting of the stockholders of the corporation, at the house of *Nathan Griswold*, and the transactions at such meetings, as hereinafter mentioned: all of which acts and things were done and took place, before the plaintiff sued out said writ. After the disposition and sale of said property, and the collection and payment out of said moneys, and before the sueing out of said writ, *viz.* on the 15th of *March*, 1849, a meeting of the stockholders of said corporation was regularly and legally warned and holden at the house of said *Nathan Griswold*, in *Killingworth*, for the purpose of passing any votes, or doing any business, which might be properly and legally done thereat; that no business was done at said meeting, except what purports to have been done thereat, by the vote hereinafter mentioned; that all of the stockholders of the corporation, *viz. Reuben K. Hinckley*, *William C. Nettleton*, and the said *Nathan Griswold*, attended said meeting; and that all of the capital stock of said corporation, owned or held by the said *Hinckley* and *Nettleton*, was, by them, at said meeting, regularly transferred and conveyed to said *Griswold*, who thereby then became, and ever since has been, and still is, the sole owner and holder of all the capital stock of said corporation; that during a period of several months next previous to said meeting, said *William C. Nettleton* was, and had been, the secretary of said corporation; and said *Nathan Griswold, Reuben K. Hinckley*, and *William C. Nettleton*, were the directors, and only directors, of said corporation, they having been respectively duly elected and appointed to said offices; that, since the said meeting, there has been no election, appointment or resignation of any director, secretary, treasurer, agent,

*Middlesex*,
July, 1850

Evarts
*v.*
Killingworth
Manuf. Co.

or any other officer of said corporation, nor any meeting or session of said corporation, or of the stockholders, or any of the stockholders thereof.

The defendants, on the trial, claimed, that before the plaintiff's writ was sued out or served, *viz.* at said meeting of the stockholders of said corporation, held on the 15th day of *March,* 1849, as aforesaid, said *William C. Nettleton,* resigned his said office as secretary of said corporation ; and said *Reuben K. Hinckley,* and *William C. Nettleton,* and *Nathan Griswold,* resigned their offices of directors of said corporation ; and that said resignations were, at said meeting, accepted, by the stockholders of said corporation ; and for the purpose of proving said resignations and acceptance thereof, the defendants introduced in evidence, the record book of said corporation, containing an entry or recital of a vote purporting to have been passed at said meeting, and to be attested and authenticated in the words following, *viz.*

"At a meeting of the stockholders of the *Killingworth Manufacturing Company,* holden at the house of *Nathan Griswold,* in said *Killingworth,* on the 15th day of *March,* 1849, which meeting was duly warned, and legally holden, by acceptance of the notice for said meeting by all the said stockholders, and at which they were all present. The transfers of stock of said company were made by *Reuben K. Hinckley* and *William C. Nettleton.* At the same meeting, *Nathan Griswold, Reuben K. Hinckley,* and *William C. Nettleton,* resigned their offices as directors, and at the same meeting, *William C. Nettleton* resigned his office as agent and secretary ; all which were accepted by said stockholders." *William C. Nettleton, Secretary.*

The court found, and it was admitted, that said vote, and the attestation or certification thereof, and the name of *William C. Nettleton,* signed thereto as secretary, were in the handwriting of said *William C. Nettleton,* and made and entered in said book by him ; and the defendants also introduced parol evidence to prove, that said vote was passed at said meeting ; that the resignations and acceptance thereof, as therein stated, took place ; and that what is mentioned in said vote, as having taken place and been done at said meeting, there took place and was done. The plaintiff objected to the admission in evidence of said vote, and also to the admis-

sion of said parol evidence, for the purpose aforesaid; and the said evidence was received by the court, subject to all legal exceptions thereto. If under the circumstances aforesaid, either the said entry or recital of such vote, or the said parol evidence, or both of them conjointly, were legally admissible, for the purpose for which they were offered, the court found, that the said vote was passed at said meeting; that the resignations and acceptance thereof, as therein stated, took place; and what is mentioned in said vote, as having taken place and been done at said meeting, then took place and was done. If, however, neither said entry or recital, nor said parol evidence, was admissible for said purpose, the court found, that said vote was not passed at said meeting, and that neither of the resignations nor acceptance thereof, as therein stated, and that what is mentioned in said vote as having taken place and been done at said meeting, was not done, and did not take place.

*Middlesex,*
July, 1850.

Evarts
*v.*
Killingworth
Manuf. Co.

The court further found, that the said stock was so as aforesaid transferred and conveyed to said *Griswold*, and that all of the said acts and transactions at said meeting, were done, and that the said vote was passed, by said stockholders present thereat, for the purpose, and with the intention, of preventing the bringing of any suit, or the legal service of any writ or process, or the obtaining of any judgment against said corporation, either by the plaintiff, or any other person, and under an expectation and belief that a suit would otherwise be brought against said corporation by the said plaintiff; and the court also found, that the doings of the officer who served, or professed to have served, the writ in this case, and whose name is affixed to the return thereof, are truly stated in said return.

Upon these facts, the case was reserved for the advice of this court, as to what judgment should be rendered.

*Ingham* and *Spencer*, for the plaintiff, after remarking, that the only question in this case was, whether the service of the writ was sufficient, contended,

1. That the copy left with *W. C. Nettleton*, was properly left. He was *secretary* of the company, at the time of service. He certainly was so, if he had not, on the 15th of *March*, 1849, made a valid resignation; for the mere transfer

of all the stock to *N. Griswold*, did not dissolve the corporation, or vacate the office of secretary.   9 *Conn. R.* 544, 5.

In the first place, the defendants offered no *legal evidence* of his resignation.   The *recorded vote* was not admissible, because if the resignation was effectual, the record was made by him after his resignation, when he had no right to make it; both the *resignation and its acceptance* being *immediate*, and not taking effect *prospectively*, as they might have done. But if otherwise, parol evidence was inadmissible to prove the *resignation* and *acceptance*, because it was not the best evidence.   A corporation can speak only by its votes; and the only evidence of its votes are its records.   *Bartlett* v. *Kinsley*, 15 *Conn. R.* 334.

Secondly, the evidence, if admissible, shows only an *attempt* to resign, which, however effectual it might have been, *as between Nettleton and the company*, was ineffectual as against third persons *to their prejudice*.   By becoming *incorporated*, the defendants had assumed an artificial existence, which continued until *legally dissolved*.   As a *corporation*, they had formed *relations* with third parties, which they have no right to *annul* or render *ineffectual, by their own act*.   A corporation cannot dissolve itself, by its own act; as by the surrender of its charter, unless it is accepted by the incorporating power.   2 *Kent's Com.* 319. & seq.   *Revere* v. *Boston Copper Co.*, 15 *Pick.* 351.   And if they cannot dissolve themselves *directly*, they cannot do so *indirectly*, by accepting the resignation of all their *officers* and *living representatives*, and refusing to appoint others; thus reducing themselves to a mere *impalpability and creature of the imagination*.   The public are interested in the records of a corporation, although private; and the corporation has no right, either to destroy them, or, *by their own act*, to deprive themselves of a proper recording and certifying officer.   *Stat.* p. 84. § 133, 134.

Thirdly, the by-laws of the company are such, that the secretary *must* continue to hold his office until another is elected.

But, fourthly, if the secretary could *resign* at all, his resignation could only be accepted, by the *directors*, and not the *stockholders;* he having been appointed by the *former*, and they alone having the power to fill his place.   3 *Hill's Rep.*

*Middlesex,*
July, 1850.

Evarts
*v.*
Killingworth
Manuf. Co.

247. No evidence was offered, nor is the fact found, that the resignation was accepted by the *directors.*

Fifthly, independently of any general principles on the subject of *resignations,* this particular proceeding was void, on the ground of *fraud,* which sufficiently appears from the finding.

2. That if the company had no *secretary,* yet the service was good, because a copy was left at *their principal place of business* in this state. *Stat.* 54. § 17. As the company had sold their factory, &c., and discontinued their business, without intending to resume it, their former factory could not be said to be their *place of business.* They had no longer any *interest* in it, and a copy left there could not have given them any *notice.* The last and the only place where they had done any business, since they had sold their factory, &c., was at the dwelling-house of *N. Griswold, where a copy was left.* It was not necessary for the officer to *state in his return,* that *Griswold's* house was the *principal place of business, that being the fact.*

3. That if the defendants, had neither a *secretary* nor a *place of doing business,* and therefore no service *could* be made *according to the statute,* it does not follow, that *no service* could be made. In that case, a *reasonable service* would answer, or at least, it would be sufficient to serve a copy upon, or at the dwelling-house of the *only stockholder.* And, if this is *insufficient,* the court may order such further notice as it sees fit. The language of the statute is not, that the mode of service therein prescribed shall be the *only* service, but shall be *sufficient* notice.

4. That this case is clearly distinguishable, in principle, from *Rand* v. *Proprietors of Upper Locks, &c.,* 3 *Day,* 441. The cases differ in these three important particulars. 1. *That* was a *foreign, this* a *domestic* corporation. 2. The writ was *there* served upon only *one of many* stockholders ; *here,* upon the *sole stockholder.* 3. *There,* the corporation had its regular *officers ; here,* it was *without a single officer.* This case is equally distinguishable in principle from *McCall* v. *Byram Manuf. Co.* 6 *Conn. R.* 428.; because, 1. In *that* case there was an *actual secretary,* although residing out of the state. 2. That was a question respecting the validity of an *attachment of stock* in a corporation, a proceeding which

*Middlesex,*
*July, 1850.*

Evarts
*v.*
Killingworth
Manuf. Co.

is *exclusively* a matter of statutory regulation; but *this* is a suit *against the corporation itself*, upon whom, *if there were no statute*, there could be a sufficient service at *common law*. If then, it is *impossible* to comply with the *statutory* mode of service, and independently of the statute, there might be a good service at *common law*, it will be sufficient to have made such service.

*C. C. Tyler* and *R. D. Smith*, for the defendants, contended, 1. That the *Killingworth Manuf. Co.*, formed under the general act of the legislature of this state, relating to joint stock corporations, was, at the time of the service of the plaintiff's writ, on the 22d of *March*, 1849, dissolved as a corporation, and its corporate powers had been surrendered.

2. That a corporation, created for manufacturing purposes, may be dissolved, without the consent of the legislature, or any judicial process; it being merely a partnership, possessing limited corporate power. *Slee* v. *Broom* & al. 19 *Johns. R.* 456. *Briggs* v. *Penniman*, 8 *Cowen*, 387. *Brinckerhoff* v. *Brown*, 7 *Johns. Ch. R.* 217.

3. That if not dissolved, its charter had become forfeited, when *Nathan Griswold* purchased and became the sole owner of all the capital stock of the corporation.

4. That if it existed as a corporation, at the time of the service of the plaintiff's writ, it existed by force of the law under which it was created, which prescribes the mode of service; and service, to be legal, must be made in strict conformity to that mode. *Rand* v. *Upper Locks*, &c. 3 *Day*, 441. *McCall* v. *Byram Manuf. Co.*, 6 *Conn. R.* 428.

5. That the corporate book, which contained the entry of the vote of the company, passed on the 15th of *March*, 1849, was admissible evidence, for the purpose of proving the resignation of the directors and secretary of the company. *Highland Turnpike Co.* v. *McKean*, 10 *Johns. R.* 154. *Wood* v. *Jefferson County Bank*, 9 *Cowen's R.* 194. 205. *South School District* v. *Blakeslee*, 13 *Conn. R.* 227. *Denning* v. *Roome*, 6 *Wend.* 651.

6. That if the corporate book was not admissible evidence, for the purpose of showing the resignation of the officers of the corporation, then the parol evidence must prevail.

ELLSWORTH, J. Several questions have been discussed in this case, which we have no occasion to decide ; for in one particular, we all agree, that the plea in abatement is bad, and must be overruled.

*Middlesex,*
July, 1850.

Evarts
*v.*
Killingworth
Manuf. Co.

The superior court found, that the acts of said manufacturing company and its officers, five days only before the service of the plaintiff's writ, were done to " *prevent the attachment of the company's property*," claimed to be fraudulently conveyed away from their creditors. With this finding, it is impossible to allow those acts to possess any efficacy whatever. If such a flimsy device were to receive the sanction of the court, we should lend our aid to insolvent corporations to secrete their effects from creditors. If service cannot be made, as in this case, by leaving a copy with *Wm. C. Nettleton*, the late secretary, it can never be made at all. Perhaps equity might give relief ; but even then, service of the writ is essential on some one ; but no other service could be made, substantially better than this which is made.

We consider the secretary, who was in office up to the 15th of *March*, as continuing in office on the 19th, notwithstanding his fraudulent resignation, which we consider no resignation at all.

Besides, were it necessary, we should probably hold, that as *Nathan Griswold* had then become the sole stockholder, there being, on the defendants' hypothesis, no directors, nor secretary, nor place of business, a service of the writ on him, such as was in fact made, would be sufficient.

The question of the admissibility of the recorded vote of the 19th of *March*, showing the resignation of the clerk, becomes unimportant, in the view we take of that transaction. We are, however, inclined to think the paper vote is admissible in evidence. No new secretary was appointed ; and if the last cannot record the acceptance of his own resignation, it cannot be recorded at all ; and this *admitted* act of the company, can have no existence, because there is no technical proof in the record. And if, indeed, such be the case, it can avail nothing to the defendants ; for if there is no proof of the acceptance of the resignation, the old secretary remains in office, and can be treated as if nothing had been done.

*Middlesex,*
July, 1850.

Evarts
*v.*
Killingworth
Manuf. Co.

We think it proper for a succeeding clerk, when there is one, to record the resignation of his predecessor; but too much technicality must not be required in this matter; for it may be asked, what is the exact time, when a clerk ceases to be in office? Is it when he resigns, or when his resignation is accepted, or after its acceptance is recorded, and so becomes complete? It is a common practice for corporate bodies to choose a presiding officer before there is any clerk to make a record; the clerk, when chosen, is often sworn into office, by this presiding officer; and yet the clerk can make a record of these transactions. If, when chosen, he is present to attest what was done, or knows the truth of what he records, he may make a valid record; and this is all that is generally required in this state. A more precise rule would be attended with much inconvenience.

The further claim, that the defendants ceased to be a corporation after their vote of the 15th of *March,* because their charter then became extinct, by the resignation of their officers, and the omission to elect others, is wholly inadmissible. Whether mere disuse of any or all corporate power, works a determination of corporate being and corporate liability, we need not say; though we believe it would be difficult to maintain the affirmative of the proposition. According to numerous decisions, the franchise should be formally surrendered to the legislature who gave it. In case of forfeiture, the legislature can retake it, by a judicial proceeding on a *quo warranto.*

We advise that judgment be given for the plaintiff.

In this opinion the other Judges concurred.

Judgment for plaintiff.