THE CITY OF FORT SCOTT V. FREDERICK SCHULENBERG, *et al.*

1. CORPORATE POWERS, *Non-User of.* A mere non-user of all corporate powers is not a concealment of the corporation, such as to suspend the running of the statute of limitations.

2. OFFICE, *When Not Vacated.* Under the general incorporation law of 1866, a failure to elect a successor did not, in the absence of some restrictive provision in the by-laws, vacate the office of president, but the then incumbent continued as officer *de facto* so far, at least, that service upon him would bring the corporation into court.

3. STATUTE OF LIMITATIONS, *When Not Suspended.* The mere fact that the mayor, to whom, in conjunction with the council, is given the gen-

eral management of the affairs of a city, is interested adversely to the city in a cause of action belonging to it, and a necessary party defendant in an action to enforce such cause of action, does not operate to suspend the running of the statute of limitations.

4. ———— Where action on a note or bond is barred, it is also barred on the mortgage given solely as security therefor.

*Error from Bourbon District Court.*

AUGUST 16, 1869, the Agricultural, Horticultural and Mechanical Society of Bourbon county, Kansas, theretofore duly incorporated under the laws of this State, executed and delivered to the *City of Fort Scott*, in part payment of the purchase-price of certain land in said county, its certain written obligation, secured by a mortgage on said land, which mortgage was duly recorded, August 24, 1869. This obligation in terms stipulated that as long as said society used said land for Fair purposes, the sum mentioned and secured, to wit, $2,000, should neither draw interest nor become payable; but that if the society ceased so to use the land purchased, then that the aforesaid sum of money should immediately become due and payable. The society made certain improvements on the land purchased, and became indebted on account thereof to one C. W. Goodlander, who filed a mechanic's lien therefor upon the mortgaged land and improvements. Afterward, Goodlander brought suit to foreclose his lien, but did not make the *City of Fort Scott* a party thereto. No defense was made by said society, a decree was accordingly rendered, and Goodlander, at a sale under a special execution issued thereon, bid in the land for his debt, and took possession thereof, May 7, 1872. No term of years was fixed in the charter of the society limiting its duration. It was never dissolved by legislative or judicial act or decree. This action was brought by the *City of Fort Scott*, March 7, 1878, to foreclose its mortgage. The defendants in error are now in possession of said land, having been judgment creditors of Goodlander, and having purchased under their own execution, taking possession October 18, 1876. Neither of the defendants has been in the state of

Kansas. They claim under a chain of sheriff's deeds from the mortgagor.

At the December Term, 1878, of the district court, a demurrer to the petition was interposed by *Schulenberg* and *Bœckeler*, and sustained, and judgment rendered for the defendants. The *City of Fort Scott* brings the case here for review.

*Eugene F. Ware*, for plaintiff in error:

Goodlander, having bidden in the land for his debt, took possession thereof May 7, 1872, and thereupon the "Agricultural Society of Bourbon County, Kansas," organized with a capital stock of ten thousand dollars, "to encourage progress and perfection in agricultural, horticultural and mechanical pursuits," vanished, became a synonym for fraud, and has not been heard from since. Who the officers of the society were when it vanished is not definitely known, the records being all destroyed. There were officers, but they all deny it. The society never had any by-laws. There was never any meeting of the officers or members at which it was agreed or decided that the society should surrender its charter or should dissolve, nor any acceptance of its dissolution by the state. Everybody connected with the society simply let go; there was no more money in it, and it became *in nubibus*.

1. The said society was never dissolved. There are but two ways in Kansas by which a corporation can be dissolved —efflux of time, and judicial decree. Non-user will not of itself dissolve a corporation, though furnishing a good reason for such dissolution. The society had no "time limited in its charter," neither was any time fixed by the act of 1866, under which the charter issued. The law of 1866 was a repeal of all former laws, and a revision and reënactment. Although a corporation discontinues business, and ceases having officers, agents, property or place of business, and disappears entirely from the commercial world, still such facts do not of themselves work a dissolution.

2. Service of summons upon corporations must be made in the manner indicated by statute. Officers of corporations do not hold over until their successors are elected and qualified; they hold only until the year or other time expires for which they were elected. (Gen. Stat., ch. 23, § 17; Laws 1866, p. 130, § 16.) If a corporation, at the expiration of the official year, refuses or fails to hold an election, and if by law the terms of its officers have expired, and they cannot legally hold over, and if as a fact they refuse to act as officers and hold over, will service of summons upon them as officers be a valid service?

As the society had no elections after Goodlander took the land, the terms of all the officers must have expired within a year thereafter, to wit, May 7, 1873. Therefore, we say that after that date there were no officers whose terms had not expired. None of the officers upon whom, by the terms of the statute, service of summons could be had were in existence; the year had ended for which they were elected, and no statute or by-law compelled them to hold over, or permitted them to hold over. Neither did the officers by their own will hold over; for, on the contrary, they refused to so act and hold over; and more than that, they even refused to hold their respective offices during the latter part of the year for which they were actually chosen.

We further show, that after May 7, 1872, there was no managing agent, no statutory appointee, no property, no place of business. The law says (Gen. Stat., p. 195, § 21,) that if an election is not held on the proper annual day, that the "corporation shall not for that reason be deemed to be dissolved." The expression is equivalent to saying, that although the term of office of all of the officers of the corporation has expired, and the company is without officers, still that fact will not of itself work a dissolution; the members can get together and elect. If officers held over until their successors were chosen and qualified, the society would never be without officers after the first election; and if the organization would be thus complete after the expiration of the

official year as before, why the suggestion of non-dissolution in the statute? By common law, the officer only held for the year he was elected, and the laws of Kansas make no change. Hence we allege, that both as a matter of fact and as a matter of law, that from May 7, 1873, there has been no one upon whom actual service of summons could be made in the form by the statute prescribed.

3. If a corporation by its voluntary act permits its organization to fall into abeyance, or assume such a position, *actual service* cannot be had. It is the same as if an individual should voluntarily take such steps that no actual service of summons could be had. It is, in contemplation of law, a *concealment;* the corporation still exists, but cannot be found by the creditor.

4. We claim that the statute concerning concealment (Gen. Stat., ch. 80, § 21,) applies as much to a corporation as to an individual. If not, all that a corporation would have to do would be to dispose of its property, dismiss its agents, close its place of business, and refuse for a few years to meet and elect officers, and when all claims were outlawed, then meet and elect officers under § 21, ch. 23 of Gen. Stat., and revamp or "materialize" the corporation.

5. A mortgage of real estate being an incident to the note which it secures, is not barred until the note is. In this suit the defendants in error took the land with knowledge of plaintiff's rights as shown by the record. Goodlander, under whom they claim, took the land under foreclosure in an action in which this plaintiff was not a party, and with the mortgage upon record. Actual service upon the corporation could not have been had since May 7, 1873, and could not be had in the suit at bar. Actual service could not have been had upon the defendants in error since they bought the land in October, 1876, because they were never in the state of Kansas.

Perhaps a municipal corporation in this state is not generally permitted the benefit of the rule, *nullum tempus occurrit regi;* if it is, we claim it; but if not, we do nevertheless

think that there is enough of it left, or ought to be enough of it left, to decide this case in plaintiff's favor.

In this action the society makes no appearance; is not in court; we do not know where it is, and it makes no plea of the statute of limitations. In order to foreclose the mortgage, the defendants in error are necessary parties. As they have never been in Kansas, actual service could never be made on them. Deduct the time of their absence, and five years have not elapsed since the obligation and mortgage became payable. Can they plead the statute of limitations? They took the land subject to the mortgage, and being also non-residents of this state, what equity is there in permitting them to plead the statute?

*Lowe & French,* for defendants in error:

1. The action upon the note for which the mortgage was given, being barred as to the obligor and mortgagor (the agricultural society), it is also barred as to its grantees; and the fact that the defendants are non-residents of the state is irrelevant and immaterial. They stand in the shoes of the agricultural society, which is not a non-resident. (18 Kas. 176; 17 id. 9; 2 Washb. Real Prop. 173.)

2. It is clear, upon the averments of the petition, and upon the theory of the plaintiff, that service of process might have been made upon the corporation (the agricultural society) at any time from the maturity of the obligation, on May 7, 1872, up to May 7, 1873. The statute therefore commenced to run May 7, 1872, and having once commenced to run, its operation would not be suspended, except for some cause made an exception by the statute itself. The non-user of its franchises by a corporation, or its non-election of officers, is certainly not embraced within any of the statutory exceptions. A domestic corporation cannot be absent from the state. Absconding and concealment cannot be predicated of a corporation — an artificial, intangible, invisible being, which exists only as a legal and ideal entity, and not as a physical person or object. If the case, therefore, is not

brought within any of the exceptions created by the statute, the general rule of the statute must govern. Courts cannot make exceptions which the statutes do not authorize. (Angell on Lim. §§ 194, 476, 477; 6 Kas. 75; 6 Ohio, 35; 3 Allen, 328; 1 How. 37; 1 Wheat. 25.)

3. Upon the averments of the petition, the agricultural society may properly be regarded as a continuously existing corporation, with full legal capacity to be sued, and that there had been no time at which the company could not have been served with process by service upon its president. The petition shows that there were a duly elected and acting president and corps of officers, on and after May 7th, 1872. In the absence of an election of other officers to succeed them, the president then incumbent continued to remain such, and that service upon him at any time would have brought the company into court. The society was organized as a corporation under the corporation act of 1866. It is provided by this act that the failure to elect officers at the time appointed by the by-laws, shall not operate to dissolve the corporation, but that they may be elected at any other time. (Act of 1866, p. 124, §§ 7, 16.) Nowhere in this statute is the term of the president limited to any fixed time, and the provision that he shall be chosen by the directors as soon after their election "as may be convenient," is directory only, and far too indefinite to fix a specific term. As the corporation is not dissolved by a failure to elect officers, and as no specific limit is fixed to the president's term of office, it obviously results that he remains president until a successor is chosen. It is not true that an office for which there *may be* an annual election necessarily becomes vacant by failure to elect at the time appointed. In Angell and Ames on Corporations, § 143, it is said, "without doubt a statute or by-law, or even an appointment, may be so restrictive as to terminate an annual office at the end of the year; but an election *for a year* has never been considered one of this description. A clause in a charter which directed that aldermen should be chosen annually, was held to be only directory, and not to determine the office

at the end of the year after election; but that the person legally elected and sworn into office should continue until removal." (6 Conn. 428; 1 Stra. 625; 2 Brown, P. C. 294; 4 Litt. 433.)

The opinion of the court was delivered by

BREWER, J.: This was an action to foreclose a mortgage, and the defense relied on, and raised by a demurrer to the petition, was the statute of limitations. The facts are these: On August 16, 1869, an agricultural society of Bourbon county, a corporation organized under the laws of this state, was the owner of the premises, and upon that day executed a bond and mortgage to the plaintiff. By its terms, this bond became due whenever the society ceased to use the premises as a fair ground. On May 7, 1872, the premises ceased to be so used, having been that day taken possession of by C. W. Goodlander, a purchaser at a sheriff's sale. Goodlander held possession until October 18, 1876, when the defendants took possession, having purchased them upon an execution against him. This action was commenced March 7, 1878, five years and ten months after the cause of action accrued. Was it barred by the statute of limitations? *Prima facie,* it was; for five years bar an action upon a written contract. To avoid this, three matters are presented. First, it is said that, in contemplation of law, the agricultural society (the obligor and mortgagor) concealed itself after May 7, 1873, so that no service of summons could be made upon it, and that, therefore, the time of such concealment must be deducted from the running of the statute. The allegations of the petition in respect to this concealment are quite lengthy, but are in substance, that the officers and members of the society renounced all connection with it, or its business or affiairs, and refused to be considered as officers or members; that no meetings were had or officers elected ; that nothing was done or attempted to be done in respect to the society or its business, or toward keeping up its organization, or in recognition of its existence; and that there were

no officers upon whom a summons could be served. In short, the picture is presented of a corporation whose charter has not expired by lapse of time or been vacated by judicial decree, ceasing all corporate action. Was this *non-user* of corporate franchises a concealment within the scope of the statute of limitations? We think not. It may be doubted whether a corporation can ever be said to abscond or conceal itself, but certainly the mere failure to hold meetings, elect officers or exercise corporate powers, in short, the mere *non-user* of all the corporate franchises, is not a concealment. It would be more like concealment if the corporation attempted to hold meetings, elect officers and transact corporate business, without letting the public know when or where the meetings were held, who were the officers, and where the corporate business was transacted. There is more of concealment in secret action than in non-action. An omission to keep the corporation in active life is not a concealment of the corporation.

**1. Corporate powers, non-user of.**

Again, while it is alleged that there were no officers of the corporation upon whom a summons could be served, yet it is admitted that until May 7, 1872, the corporation had its complement of officers. To avoid the effect of this admission, it is alleged that their terms of office expired before May 7, 1873, and that long before this they had refused to serve as such officers; that they were not reëlected, nor were any successors elected. It would seem, from this admission, that there was no time at which service of a summons could not have been made upon the corporation.

In the absence of an election of a successor or the acceptance of a resignation, the president then incumbent continued to remain such, and service upon him at any time would have brought the company into court. The society was organized as a corporation under the corporation act of 1866. It is provided by this act that failure to elect officers at the time appointed by the by-laws shall not operate to dissolve the corporation, but that they may be elected at any other time. (Act of 1866, p. 124, §§ 7 and 16.)

**2. Office, when not vacated.**

The provision in reference to the appointment of a president is as follows: "An annual election shall be held for directors at such time and place as the stockholders, at their first meeting, may determine, or as the by-laws of the corporation may require; and the directors chosen at any election shall, so soon thereafter as may be convenient, choose one of their number president, and shall appoint a secretary and a treasurer of the corporation," etc. (Sec. 5, p. 126.) Nowhere in the statute is the term of the president limited to any fixed time, and the provision that he shall be chosen by the directors as soon after their election "as may be convenient," is directory only, and far too indefinite to fix a specific term. As the corporation is not dissolved by a failure to elect officers, and as no specific limit is fixed to the president's term of office, it obviously results that he remains president until a successor is chosen.

It is not true that an office for which there *may be* an annual election, necessarily becomes vacant by failure to elect at the time appointed. In Angell & Ames on Corporations, § 143, it is said: "Without doubt a statute or a by-law, or even an appointment, may be so restrictive as to terminate an annual office at the end of the year; but an election *for a year* has never been considered one of this description. A clause in a charter which directed that aldermen should be chosen annually, was held to be only directory, and not to determine the office at the end of the year after election; but, that the person legally elected and sworn into office should continue until removal." (*McCall v. Byram Manf. Co.*, 6 Conn. 428; *Foot v. Prowse*, 1 Stra. 625; *Pender v. Rex*, 2 Brown, P. C. 294; *Weir v. Bush*, 4 Litt., Ky., 433; *Queen v. Durham*, 10 Mod. Rep. 147; *People v. Runkel*, 9 Johns. 147; *Slee v. Bloom*, 5 Johns. Ch. 366.)

Again, it is alleged that during the years 1875 and 1876, the G. W. Goodlander who purchased and had possession of the premises was mayor of Fort Scott. Hence, because he was a necessary party defendant and the chief executive officer of

42—22 KAS.

the city, plaintiff's counsel contends that the running of the statute must be suspended while such relation existed. It is nowhere alleged that he interfered to prevent suit, or that he took any action whatever in the premises; but the claim is rested upon the single fact that he was mayor. The claim cannot be sustained. The mayor was not sole manager of the city's affairs. The powers were vested in the mayor and council. The right to bring an action existed all the time. The mayor had no power, and made no effort, to stay the suit. The question might be different if the sole power to maintain action on the part of the city was vested in the mayor. The cases of *City of Oakland v. Carpentier*, 13 Cal. 540, and *Ryan v. L. A. & N. W. Rly. Co.*, 21 Kas. 365, might perhaps then be in point; but the present case is neither within the letter nor the spirit of any of the exceptions named in the statute. Surely the courts would not be warranted in engrafting an exception and suspending the running of the statute in a case in which there was in fact no power and no effort to prevent suit by any party interested adversely to the rights of the city.

3. Statute of limitations, when not suspended.

The third point raised is, that the statute did not run against these defendants because they have always been non-residents. But the bond is the principal, and the mortgage only incident thereto; and where action in the former is barred, it is also on the latter. (*Watterson v. Kirkwood*, 17 Kas. 9; *Schmucker v. Sibert*, 18 id. 176.)

4. Action on mortgage, when barred.

Upon the entire record we see no error, and the judgment will be affirmed.

All the Justices concurring.