(July 1, 1901.)

## THUM, RECEIVER, v. PYKE, RECEIVER (OGDEN SAVINGS BANK, INTERVENER).

[66 Pac. 157.]

FOREIGN CORPORATION—RIGHTS OF COURTS OF THIS STATE.—Where O. S. B., a corporation of Utah, has submitted itself to the jurisdiction of a court of this state in certain insolvency proceedings, and thereafter, by proceedings in the courts of anctl.er state, claims to have secured title to shares of stock which are evidence of assets in the custody of this state, said O. S. B. corporation will not be assisted by the courts of this state in obtaining such assets, to the detriment of citizens of this and otl.er states who have filed and proved their claims in the court of tl.is state having possession of such assets.

JURISDICTION—SERVICE OF SUMMONS.—When judgment was obtained in a court of a sister state, and it is sought to give effect to such judgment in the courts of this state, and it is shown that the service of summons was made upon a former secretary of the corporation defendant, and it appears that such person was not such secretary at the date of the service of summons, and that plaintiff knew that he was not such secretary or an officer of the defendant corporation, *held,* that jurisdiction of the defendant corporation was not obtained by such service, and that the judgment rendered the ein is absolutely void so far as its enforcement by the courts of this state is concerned.

JUDGMENTS AND DECREES OF SISTER STATES.—The jurisdiction of every court is open to inquiry when its judgments and decrees are produced in the court of a sister state, and it is there sought to give them effect.

FULL FAITH AND CREDIT TO PROCEEDINGS OF COURTS OF OTHER STATES. Full faith and credit shall be given in each state to the judicial proceedings of every other state. But that rule does not require the court of a state that first obtained possession of the assets of an insolvent to give up such assets to a creditor of such insolvent who acquired title to shares of stock, representing such assets subsequent to the time of the appointment of a receiver for the estate of such insolvent and taking possession of said assets by the receiver.

NONRESIDENT SUBMITTING TO JURISDICTION.—A citizen of another state who has submitted himself to the jurisdiction of a court of this state, which has in its possession assets of an insolvent, will not be given or permitted an advantage over citizens of our own and other states in recovering debts due from such insolvent estate.

RESIDENT AND NONRESIDENT CREDITORS.—The laws of this state will not permit nonresident creditors of an insolvent, whose assets are in the hands of a receiver, to obtain any advantage over resident creditors. Resident and nonresident creditors, in such cases, stand before the courts of this state on an equality.

COMITY.—Comity between states does not require the courts of this state to give to foreign creditors an advantage over resident creditors of an insolvent.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

E. E. Chalmers and F. S. Dietrich, for Appellant.

The Utah statutes, like ours, requires that summons shall state the sum or amount for which judgment will be taken upon a money demand in case default is made, but the summons in this case fails to specify such amount, but only that "judgment will be entered according to the prayer of the complaint." To establish that this is a fatal jurisdictional defect scarcely requires citation of authority. But see Idaho Rev. Stats., sec. 4140, subd. 4; *Dyas v. Keaton,* 3 Mont. 498; *Ward v. Ward,* 59 Cal. 139; *Atchinson etc. F. R. Co. v. Nicholls,* 8 Colo. 189, 6 Pac. 512. The affidavit for attachment does not purport to be made on behalf of or by the plaintiff. It is false, in that it asserts that the demand has accrued, whereas the

verified complaint states and shows that it had not then ac-
crued. It is further false in that it avers the defendant to
have been a nonresident, whereas the verified complaint and
the proof show that defendant is a Utah corporation. It is
further false in that the debt was not then due. If an affidavit
for attachment is false, the court acquires no jurisdiction to
issue the writ. (*Murphy v. Montandon,* 3 Idaho, 325, 35 Am.
St. Rep. 279, 29 Pac. 851; *Vollmer v. Spencer,* 5 Idaho, 557,
51 Pac. 609.) The judgment is not signed by the judge; pur-
ports to be by default, and is for more than the amount speci-
fied in the summons. It is not, therefore, supported by the
prior proceedings, and must fall. (*State v. Woodlief,* 2 Cal.
242.) It is conceded on behalf of the intervener that these
judgments, like any others, may be attacked for jurisdictional
defects; these are the very grounds upon which we attack them,
and yet counsel retort that the matters therein referred to have
been adjudicated, and cannot therefore be inquired into juris-
diction or no jurisdiction. We attack the jurisdiction first, and
then, believing that it has been overturned by the record herein
made, show by the testimony that there was nothing due to
either McCornick & Co. or to its assignee, the intervener
herein, for which to foreclose and acquire title to the stock in
question. (See the recent case of *Eureka Merc. Co. v. Cali-
fornia Ins. Co.,* 130 Cal. 153, 62 Pac. 393; Freeman on Judg-
ments, 3d ed., secs. 561, 563, 565, 566; 12 Ency. Pl. & Pr. 216
et seq. See, also, *Leland v. Isenbeck,* 1 Idaho, 469; *Strode v.
Strode,* 6 Idaho, 67, 96 Am. St. Rep. 249, 52 Pac. 161.) Addi-
tional authorities to effect that a judgment in a foreign juris-
diction is not conclusive: Beach on Receivers, par. 450; *Rust v.
Waterworks Co.,* 70 Fed. 420; Smith on Receivers, par. 237;
High on Receivers, sec. 47a; also sec. 349; *Reynolds v. Stockton,*
140 U. S. 254, 11 Sup. Ct. Rep. 773, 35 L. ed. 466; *Pendleton
v. Russell,* 144 U. S. 640, 12 Sup. Ct. Rep. 743, 36 L. ed. 574.

W. D. Riter (by courtesy of Court) and David Evans, for
Intervener and Respondent.

The appellant was appointed receiver of this corporation by
a court of this state. He had no extraterritorial jurisdiction.

He was appointed receiver by a court of this state simply to collect and preserve the property of the corporation within its jurisdiction, and to distribute it as the court might direct. By his appointment the corporation was not dissolved, and a party outside the state where he was appointed was not bound to make him a party defendant to a suit instituted to recover judgment against the corporation. This is elementary. (*Thum v. Pingree,* 21 Utah, 348, 61 Pac. 18.) There being no receiver appointed in the state of Utah, our contention is that any property which may be found within the state of Utah is subject to attachment, levy and sale, the title to which passes to the purchaser as against a receiver in a foreign jurisdiction. It is perfectly clear under the authorities that insolvent laws have no force outside of the state in which the receiver is appointed. Property attached in any other state before reduced to possession by a receiver or trustee will be held by such prior levy. This includes the capital stock of a corporation, on debts and choses in action. (*Moran v. Struges,* 154 U. S. 256, 14 Sup. Ct. Rep. 1019; *Reynolds v. Adden,* 136 U. S. 348, 10 Sup. Ct. Rep. 843; *Rhown v. Pearce,* 110 Ill. 350, 51 Am. Rep. 691; Story on Conflict of Laws, 414; High on Receivers, secs. 47, 239, 244 (a).) It is well settled that the judgment of a court having general jurisdiction of the subject matter involved in the judgment cannot be successfully attacked in a collateral proceeding, because of an imperfect or defective complaint in the action in which it was rendered. If the facts stated in the complaint are not sufficient to entitle the plaintiff to the relief demanded therein and awarded by the judgment, the action of the court in deciding otherwise and rendering its judgment in accordance with the prayer of the complaint can be nothing more than an error. (*In re James,* 99 Cal. 374, 37 Am. St. 60, 33 Pac. 1122; *Rowe v. Palmer,* 29 Kan. 337; *Frankfurth v. Anderson,* 61 Wis. 107, 20 N. W. 662; *Matthews v. Densmore,* 109 U. S. 216, 3 Sup. Ct. Rep. 126; Vanfleet's Collateral Attack, sec. 61.) The next objection is to the jurisdiction of the court. The statutes of Utah, at the time the summons in question was served, contained the requirement that in an action arising on a contract for the recovery of money or damages

only, the summons shall contain a notice that unless the defendant so appears and answers the plaintiff will take judgment for the sum demanded in the complaint, stating it. The summons served by the plaintiff upon the defendant, C. Bunting & Co., Bankers, in the suit now under consideration, instead of naming the amount, contained this clause: "And you will please take notice that unless you do so appear and answer said complaint within said time, that judgment will be entered against you according to the prayer of the complaint, a copy of which is herewith served upon you." Was the variance fatal, and did it deprive the court of jurisdiction? The supreme court of Utah has passed upon this very question, holding that the variance is immaterial and does not deprive the court of jurisdiction. (*Miller v. Zeigler,* 3 Utah, 17, 5 Pac. 518; *Keybers v. McComber,* 67 Cal. 395, 7 Pac. 838; *Holland v. Adair,* 55 Mo. 49; *Highley v. Pollock,* 21 Nev. 198, 27 Pac. 895; *Behlow v. Shorb,* 91 Cal. 141, 27 Pac. 546; *Clark v. Palmer,* 90 Cal. 504, 27 Pac. 375; *McCoun v. New York C. Ry. Co.,* 50 N. Y. 176; *Brown v. Eaton,* 37 How. Pr. 385; *Schuttler v. King,* 12 Mont. 149, 30 Pac. 25; *Burkhardt v. Haycox,* 19 Colo. 339, 35 Pac. 730.) When the court has jurisdiction of the subject matter of the suit, and by personal service of the summons has jurisdiction of the person of the defendant, the entry of judgment by default upon a summons which is merely irregular in not fully stating the cause of action, but which is regular in other respects, is voidable but not void. (*People v. Dodge,* 104 Cal. 487, 38 Pac. 203; *Dore v. Dougherty,* 72 Cal. 232, 1 Am. St. Rep. 48, 13 Pac. 621; *Woodbury v. Maguire,* 42 Iowa, 339; *Dougherty v. McManus,* 36 Iowa, 657; *Gray v. Wolf,* 77 Iowa, 630, 42 N. W. 504; *Dunham v. Wilfong,* 69 Mo. 355; *Semple v. Glenn,* 91 Ala. 245, 24 Am. St. Rep. 894, 6 South. 46, 9 South. 265; *Hull v. Webb,* 78 Ill. App. 617.) Also devoid of merit is the next objection, that the judgment rendered is not signed. (13 Am. & Eng. Ency. of Law, 2d ed., 1047; 1 Black on Judgments, secs. 261, 267, 270.) The rights of a purchaser at an execution sale cannot be affected by defects or informalities in the return. (*Clark v. Lockwood,* 21 Cal. 220; *Brook v. Rooney,* 11 Ga. 423,

56 Am. Dec. 430; *Holman v. Gill,* 107 Ill. 467; *Mills v. Lombard,* 32 Minn. 259. See, also, cases cited in 21 Am. Dig. 1875.) That a valid service of summons was made upon the defendant company by service upon Flowers, its secretary and director, will be apparent from an examination of the following cases: *Caraghan v. Exporters' etc. Oil Co.,* 57 Hun, 588, 11 N. Y. Supp. 172; *Parker v. Bethel Hotel Co.,* 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; *City of Fort Scott v. Schulenberg,* 22 Kan. 452; *Persons v. Buffalo City Mills,* 51 N. Y. Supp. 645, 29 App. Div. 45; *Friendenberg v. Lee Construction Co.,* 27 Misc. Rep. 651, 58 N. Y. Supp. 391; *Wamsley v. Horton & Co.,* 23 N. Y. Supp. 85, 68 Hun, 549; *Warner v. Callender,* 20 Ohio St. 190; *Richmond etc. Ry. Co. v. New York etc. Ry. Co.,* 95 Va. 386, 28 S. E. 573; *Evans v. Killingworth Mfg. Co.,* 20 Conn. 447; *Ry Co. v. Brown,* 17 Wall. 445; *Lewis v. Glenn,* 84 Va. 941, 6 S. E. 866.

SULLIVAN, J.—This case was before this court on appeal at its November, 1898, term, and is reported in 55 Pac. 864. This action was brought by C. E. Thum, the receiver of C. Bunting & Co., Bankers, hereinafter referred to as the "Banking corporation," against F. A. Pyke, receiver of C. Bunting & Co., Merchants, hereinafter referred to as the "merchants corporation," in which action the Ogden Savings Bank, a corporation, intervened. C. Bunting & Co., bankers and merchants, are corporations organized and existing under the laws of the state of Utah, and doing business exclusively in Idaho; and the Ogden Savings Bank is also a Utah corporation, doing business at Ogden, Utah. The Bunting Company corporations were organized in 1892, and all of the business of each of said corporations was in and conducted in the state of Idaho. The capital stock of the merchants corporation consisted of $75,000, divided into 750 shares of the par value of $100 each. Its capital stock was all issued to C. Bunting, George Y. Wallace, and C. W. Lyman, except two shares, one of which was issued to John Flowers and one to F. A. Pyke, evidently for the purpose of organization. Flowers was elected secretary of each of said corporations, and as such he had in

his custody the books and records of the corporations, other than the ordinary books of account. He continued to act as secretary of the two corporations until Lyman and Wallace sold their interests in said corporations to C. Bunting, which was in 1893. The only business transacted by Flowers, as secretary, was making and signing stock certificates, and allotting them to the different holders, with the exception of one meeting of the directors, when Mr. Bunting was appointed manager. He did not thereafter do anything, or act in any way, as secretary of those corporations. The issuance of the stock was practically all that he did as secretary. He transferred his one share of stock to Lyman and Wallace early in 1893. After Lyman and Wallace had sold their interest and all of their stock in said corporations to C. Bunting, in 1893, Flowers sent the books, minutes, and records of said corporations to him (Bunting), at his request, to Blackfoot, Idaho. Flowers has not had charge of any of the books of either of said corporations, and has not acted in any official capacity for either of them, since the fall of 1893. C. Bunting became the sole owner of all of the capital stock of both of said corporations, and the stock in the merchants corporation was by Bunting delivered to and was carried by the banking corporation as a part of its assets. On the thirtieth day of June, 1894, the banking corporation executed two promissory notes to McCornick & Co., of Salt Lake City, Utah, for $5,000 each, and delivered to said payees, as collateral security for the payment thereof, 500 shares of the capital stock of said merchants corporation. On the thirteenth day of August, 1897, there remained due and unpaid on said promissory notes between $6,000 and $7,000, as shown by the allegations of the complaint in an action to foreclose said pledge. On the last-named date it is alleged that McCornick & Co. duly assigned said promissory notes and 500 shares of stock to the Ogden Savings Bank, the intervener. On February 15, 1897, in proper suits commenced in the fifth judicial district of this state, C. E. Thum was duly appointed receiver of said banking corporation, and F. A. Pyke receiver of said merchants corporation. The latter company was solvent, and had a surplus of assets, estimated at $60,000, remaining, after paying

all of its debts. Thereupon the receiver of the banking corporation commenced proceedings in which he claimed that the banking corporation was the owner of all of the capital stock of said merchants corporation, and demanded that said surplus be turned over to him by the receiver of said merchants corporation, to be distributed to the creditors of said insolvent bank. Thereupon, under an order of the court, said surplus or remaining assets of the merchants corporation was turned over to the receiver of the banking corporation. In that proceeding the Ogden Savings Bank intervened, and set up and claimed in its complaint in intervention that it was the owner of the said 500 shares of stock which said McCornick & Co. held as collateral, and that the appellant, as receiver, was the owner of the remaining 250 shares of said capital stock, and prayed for judgment adjudging it to be the owner of said 500 shares of stock, and entitled to two-thirds of said assets, the value of which is estimated to be $60,000. It appears that the merchants corporation had no officers at the date the court ordered the receiver of that corporation to turn over the assets of said corporation then remaining in his hands to the receiver of the banking corporation, and, as above stated, the banking corporation was the absolute owner of all of the stock of the merchants corporation, subject to pledge of said 500 shares as aforesaid. In the original petition in intervention the intervener relied solely upon the title to said 500 shares of capital stock it had acquired by virtue of an execution sale in an attachment proceeding in the courts of the state of Utah by the intervener against C. Bunting & Co., Bankers, which sale took place prior to the date of filing said petition in intervention. The intervener purchased said shares of stock at such execution sale. Said execution was based upon a judgment rendered in an action brought by the Ogden Savings Bank against C. Bunting & Co., Bankers, on the second day of March, 1897, upon a promissory note for $15,000, executed by the banking corporation in favor of the Ogden Savings Bank. After the appeal above referred to was remanded by this court to the trial court, the intervener amended his petition, and in it does not refer to the title acquired to said stock by virtue of said execution

sale. It appears that some time after the intervener had submitted itself to the jurisdiction of the district court of the fifth judicial district of this state by filing its petition in intervention therein, and after having appeared in this court as a respondent in said appeal, it commenced an action in the courts of Utah, in which action judgment was entered, and said 500 shares of stock were again sold under an execution issued upon said judgment, at which sale the intervener became the purchaser of said 500 shares of stock on a bid of $100. It had evidently concluded that this title it had acquired under the purchase at the first execution sale above mentioned ought to be strengthened, or that it was not effective. The answer puts in issue the ownership of said 500 shares of stock. The cause was tried by the court without a jury, which resulted in a judgment in favor of the intervener. A motion for a new trial was denied. This appeal is from the judgment and order denying a new trial.

The assignment of errors involves the sufficiency of the legal proceedings above referred to in the courts of the state of Utah, and the rights of the intervener to come into the courts of this state and demand and recover two-thirds of the assets of said merchants corporation on shares of stock obtained in the legal proceedings in the courts of Utah, above stated. Counsel for respondent concede that the purpose of this proceeding is to receive the benefits of the stock certificates that it purchased at the execution sales in Utah, above referred to. The question presented is, Will the title thus acquired to said paper shares of stock entitle the intervener to recover in the courts of this state two-thirds of the assets of said merchants corporation? The intervener evidently claims title to said 500 shares of stock by reason of having purchased them at said execution sales, and asks the courts of this state to assist it in securing $40,000 worth of property which had been in the hands of the receiver of the court of the fifth judicial district of this state long before either of the actions were commenced on which said executions were based. Said property was placed in the hands of a receiver on the fifteenth day of February, 1897, and the first suit by the Ogden Savings Bank was commenced in a

Utah court on March 2, 1897, and the second action was commenced on the eleventh day of October, 1897. The latter action was brought some time after the Ogden Savings Bank had submitted itself to the jurisdiction of the courts of this state. It appears from the record that the jurisdiction of the Utah court is questioned in the cases of the Ogden Savings Bank against Bunting & Co., Bankers, commenced on the second day of March, 1897, and on the eleventh day of October, 1897, respectively, and in the latter case on the ground that no service of summons in said suit was had. It appears that the summons was served on one John Flowers, who was one of the incorporators of said banking corporation, and who held one share of its capital stock, and was its secretary, up to the fall of 1893, when he sold and transferred said share of stock, and sent all of the books and records of said corporation to C. Bunting, at Blackfoot, Idaho, and never acted as secretary thereafter. Said Flowers, when the summons was served on him, informed the officer that he was not the secretary of C. Bunting & Co.; that he had nothing whatever to do with them, and had no connection with C. Bunting & Co.'s business. The record shows that the intervener knew that said Flowers was not the secretary of either of said Bunting & Co. corporations at the time said summons was served on said Flowers, as it had already intervened in this proceeding, and knew that said banking corporation had no managing agent or officers, and had had none since the death of C. Bunting, which occurred in May, 1897, and also knew that all that property of both of said corporations was in the hands of said receivers. The intervener knew that Receiver Thum was interested in defending said suit in the Utah court, and it did not attempt to make service of summons on him, but sought service on one who had no interest in said matter whatever, and thereafter pressed said suit to judgment without any notice whatever to the receiver; and judgment was entered, execution issued, and said 500 shares of stock—being two-thirds of the capital stock of said corporation—was bid in by the intervener for the trifling sum of $100. It well knew that two-thirds of the assets of said merchants corporation was of the value of $40,000. The record clearly shows that Flowers had

not been secretary of said banking corporation since the latter part of the year 1893, and the Utah court got no jurisdiction by the service of summons on him, and the judgment entered therein is absolutely void, so far as the courts of this state are concerned.

But it is contended by counsel for the intervener that full faith and credit must be given by the court of this state to the judgments of the courts of the state of Utah. While that is true, it is also true that the jurisdiction of every court is open to inquiry when its judgments and decrees are produced in the court of a sister state, and it is there sought to give them effect. (*Pendleton v. Russell,* 144 U. S. 640, 12 Sup. Ct. Rep. 743, 36 L. ed. 574; *Reynolds v. Stockton,* 140 U. S. 254, 11 Sup. Ct. Rep. 773, 35 L. ed. 466; Beach on Receivers, sec. 460; High on Receivers, secs. 47a, 349; Smith on Receivers, par. 237; *Rust v. Waterworks Co.,* 17 C. C. A. 16, 70 Fed. 129.) We recognize the constitutional rule enunciated by the provisions of section 1, article 4, of the federal constitution, that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, and we insist that the intervener must recognize said rule. Long before it brought either of the suits above mentioned in the Utah courts, all of the assets of said merchants and banking corporations were in the hands of the receiver of the district court of the fifth judicial district of this state. It was in *custodia legis,* and the courts of Utah, as well as the intervener, should give full faith and credit to the judicial proceedings of the courts of this state. The intervener did not get any title to said 500 shares of stock by virtue of the execution sale made under the judgment of the Utah court entered in the suit brought on March 2, 1897, for at that time said stock was held by McCornick & Co. in pledge, and was not assigned to the intervener until the thirteenth day of August, 1897, and it acquired nothing by its execution sale thereof. The record fails to show when the sale of said stock took place under the execution issued on said judgment, and, so far as the decision of this case is concerned, makes no difference. That stock was not pledged to secure the payment of the $15,000 note due from Bunting & Co., Bankers, to the Ogden

Savings Bank, on which said suit was based; and if, instead of filing and proving its said claim in the court by which C. E. Thum was appointed receiver, it concluded to recover its claim in the courts of Utah, it no doubt has a right to what it got by that suit, but the courts of Idaho will not assist it in making the shares of stock so obtained valuable, to the detriment of the creditors who have filed and proved their claim in said Idaho court. No citizen of this state would have been permitted to bring suit in this state, or in any other state, against C. Bunt-in & Co., Bankers, after that corporation had been declared insolvent, and its assets placed in the hands of a receiver. Had he done so, no doubt he would have been punished for contempt of court. Comity between states does not go to the extent of giving citizens of other states an advantage over citizens of our own in recovering debts due them from an insolvent whose assets are in the hands of our own courts. Such creditors may come into this state, and share equally with our own citizen creditors, but they cannot, by suing in another state and getting possession of shares of stock that represent property that is in the custody of the law in this state, thereafter come into our courts, and demand and get what the law would not permit our own citizens to obtain; and that rule applies with great force to citizens of other states who have submitted themselves to the jurisdiction of our courts, and thereafter sue in their own state, and attempt thereby to obtain an advantage over domestic creditors.

It is shown that the intervener had a claim against C. Bunting & Co., Bankers, for about $16,000 at the time said banking corporation was declared insolvent, and a receiver appointed. The complaint shows that McCornick & Co. also had a claim against said banking corporation for about $6,000, for the payment of which last sum McCornick & Co. held in pledge 500 shares of the capital stock of the merchants corporation, all of which stock was owned by the insolvent banking corporation; and after the intervener had submitted itself to the jurisdiction of the courts of this state, it procured an assignment of said 500 shares of stock to itself, and on the eleventh day of October, 1897, commenced suit, which resulted in the sale of said stock

to itself for $100.   Conceding that there were $7,000 due to Mc-
Cornick & Co. and $16,000 to the intervener—a total of $23,-
000—the intervener asks that the courts of this state deliver to
it property worth $40,000 in payment of said $23,000.   Under
the facts of this case, comity does not require the courts of this
state to commit such an act of injustice to the creditors of
said insolvent resident in this and other states.   Comity between
states requires our courts to treat citizens of other states the
same as our own, but no better.   The courts of Idaho first took
possession of the property of said insolvent banking corpora-
tion, and a part of that property was the assets of the mercantile
corporation; and, if the above-cited provision of the federal con-
stitution has any application in this matter, it applies to the
courts of Utah and to the intervener.   But, as a matter of fact,
the courts of Utah only entered judgment in favor of the inter-
vener, and knew nothing of the action that had been taken by
the courts of Idaho, and have not attempted in any manner
to evade said provisions of the federal constitution.   Said 500
shares of stock have no value in themselves except as evidence,
and, apart from the assets which they represent, are utterly
worthless.   Certificates of stock are not the stock itself.   They
are but evidences of stock, and the stock itself cannot be at-
tached by a levy of attachment on the certificates.   Stock cannot
be attached by attaching the certificate any more than lands
can be attached by attaching the title deeds to such land: Cook
on Stock and Stockholders, 3d ed., sec. 485.   And at section
867 that author says: "It is a settled rule that each state will
favor its own litigants who are creditors of a corporation as
against a receiver of that corporation appointed in another state.
Hence an attachment, execution, or garnishee process levied in
the state on assets in the state belonging to a foreign
corporation will take precedence over the title of a receiver
appointed prior thereto in another state.   But there is
a certain danger connected with such proceeding.   If the
court that appointed the receiver can reach the creditor who
has obtained such a precedence of the receiver, it will compel
such creditor to release his advantage, or will commit him for
contempt."   Under the rule there laid down, if the intervener

obtained any advantage by its proceedings in the courts of Utah, the courts of this state must compel it to release such advantage. If the intervener were a resident of this state, it could prove its claim in the court that appointed the receiver, and receive its dividends the same as other creditors, and under no circumstances could it receive more than the amount due on its claim; and the same might have been done by it as a nonresident, for resident and nonresident creditors stand on the same footing in this state after they have presented and proved their claims. But the intervener, by refusing to come in on an equality with resident creditors, seeks to recover its debts by the aid of the courts of its own state, in the first instance, by getting possession of shares of stock, and then comes into the court of this state that has possession of the assets represented by said stock certificate, and asks the aid of that court to make its certificates of value by turning over to it $40,000 worth of assets— nearly double the amount of its claim against the insolvent corporation. The demand must not be allowed. No such injustice should be done to home creditors. To permit that to be done would be saying to the intervener: "You refused to come into the state court that first took possession of the property of the insolvent, and share equally with the domestic and other creditors. You acted wisely. You have purchased at execution sales under judgments procured by you in another state. The paper certificates of stock are evidence of property, which are not worth the paper on which they are written unless the court of this state, having possession of the property, aid you in making them valuable, and by so doing prevent the resident creditors from realizing on their claims against the insolvent. The courts of this state will permit you to recover about twice the amount of your claims simply because you obtained the stock certificates in a manner that would have been a contempt of court on the part of any resident creditor." No such a wrong should be perpetrated upon resident creditors, and comity between states does not require it. It must be borne in mind that the intervener is a creditor of the banking corporation, and not a creditor of the merchants corporation. If the intervener could have gotten full relief in the courts of Utah, and realized sufficient

to pay its claims, the creditors residing in this state could not legally complain. But, as the facts show, it required the aid of the courts of Idaho to make the proceedings of the courts of Utah of any benefit whatever to the intervener, and in that case it is the duty of the courts of this state to refuse to allow the intervener to obtain any advantage over resident creditors. The intervener may enjoy what it got by its actions in the courts of Utah, but the courts of Idaho will not assist it in making its paper shares of stock valuable to the detriment of the other creditors of said insolvent banking institution.

Counsel for the intervener admit, in their brief, as follows: "The purpose of the action here is to receive the benefits of the stock to which the Ogden Savings Bank had established ownership in Utah." As the Ogden Savings Bank attempted to procure title to said 500 shares of stock long after the property represented by said shares had been in the custody of the courts of Idaho, and after a resident creditor could have brought suit to enforce his claim against the insolvent, the courts of this state will not assist it in getting possession of assets belonging to the insolvent that are in the custody of the courts, and thus give a foreign creditor a decided advantage over resident creditors. Even if it be conceded that the intervener got title to the shares of stock under the execution sales in Utah, the courts of this state will not assist it in getting possession of assets to make its paper stock valuable, when it would not assist creditor citizens of this state in doing so, had they procured title to the paper stock in the same manner that the intervener did. No doubt equity would require the payment of the debt due to McCornick & Co. in full, if anything be found to be due them on the claim for the payment of which said 500 shares of stock were pledged, if the assets represented by said shares amount to that sum; and the Ogden Savings Bank may come in and file and prove its claim against said insolvent estate, and share with other creditors in its assets, provided the time has not expired for filing and proving such claims against said insolvent estate. The judgment is reversed, and the cause remanded, with instructions to dismiss the complaint in intervention, and to

enter judgment in favor of the appellant receiver. Costs of this appeal are awarded to the appellant.

Stockslager, J., concurs.

QUARLES, C. J., Dissenting.—Some of the probative facts upon which the findings of the lower court are based do not fully appear in the majority opinion. On June 30, 1894, the corporation C. Bunting and Co., Bankers, borrowed of McCornick & Co., of Salt Lake City, Utah, the sum of $10,-000, and executed therefor two notes of $5,000 each, and delivered to said payee, as collateral security for the payment of said notes, 500 shares of the capital stock of the corporation, C. Bunting & Co., Merchants, of the par value of $100 per share. On February 1, 1897, the intervener, the Ogden Savings Bank, loaned to said C. Bunting & Co., Bankers, $15,000, and took a note therefor. On March 2, 1897, the intervener commenced an action against said corporation, C. Bunting & Co., Bankers, upon said note, to recover judgment for the principal and interest due thereon and attorney fees, in the district court of the second judicial district in and for Weber county in the state of Utah, and had summons issued in said action, and the same duly served on C. Bunting, vice-president and general manager of said corporation defendant, but designated in the sheriff's return as president thereof. In said action, an attachment was issued and levied upon the said stock so pledged to the said McCornick & Co., and the intervener paid to McCornick & Co., the balance due on said notes to secure which said stock was pledged, and thereupon, said notes were assigned to the intervener by McCornick & Co., and the said collateral security turned over to it with said notes. On April 16, 1897, the corporation defendant in said action having failed to answer or otherwise plead, the default of said defendant was duly entered, and thereupon judgment was duly rendered and entered in favor of the plaintiff, the Ogden Savings Bank, and against the defendant, C. Bunting & Co., Bankers, for the sum of $16,812.50. On October 11, 1897, the intervener here, the Ogden Savings Bank, com-

menced an action in the district court of the third judicial
district of the state of Utah, in and for Salt Lake county, to
obtain a judgment for the balance due upon the notes assigned
to the said plaintiff by said McCornick & Co., and to have said
pledge enforced by judicial sale against C. Bunting & Co.,
Bankers, and summons therein was duly issued and served
upon the said corporation defendant by serving the same upon
John Flowers, secretary of the said corporation defendant.
Thereafter, and on October 29, 1897, the default of the de-
fendant corporation C. Bunting & Co., Bankers, was duly en-
tered in said action, the said defendant having failed to an-
swer or otherwise plead therein, and on November 1, 1897,
said Utah district court regularly rendered and entered judg-
ment in favor of the plaintiff therein, the Ogden Savings Bank,
and against the defendant therein, C. Bunting & Co., Bankers,
for the sum of $7,882.07, and decreeing a sale of said 500
shares of stock pledged to secure said indebtedness.

A number of sections of the Compiled Laws of Utah, relat-
ing to the issuance of attachments, levies thereof, property
subject to attachment, and to matters of practice in relation
to the entry, etc., of judgments were introduced and received
in evidence in the lower court, and are in the record before us.
A careful inspection of the judgment-roll in both of the cases
decided by the Utah courts show that the proceedings therein
were fair and regular on their face, and show apparent juris-
diction in both cases. In the first action named, the jurisdic-
tion of the Utah court as to person and subject matter is un-
questionable, and the validity of the service upon the corpora-
tion defendant by serving the summons upon C. Bunting, presi-
dent, or vice-president and general manager, of said corpora-
tion, is not seriously questioned. But the receiver here at-
tacks the service made upon the said corporation defendant in
the latter case by serving summons upon John Flowers, sec-
retary of the corporation defendant, as invalid and insuffi-
cient to give the Utah court jurisdiction. The sheriff's return
to said summons is as follows:

"State of Utah,     }
County of Salt Lake. }   ss.

"Sheriff's Office.

"I certify that I served the within and hereunto annexed summons in the city and county of Salt Lake, state of Utah, on the fifteenth day of October, 1897, upon the within named defendant, C. Bunting & Co., a corporation, by delivering to, and leaving with, John Flowers, personally, the secretary of the said C. Bunting and Company, a corporation defendant, a true and certified copy of the annexed summons, attached to a certified copy of the complaint referred to in the annexed summons; and I further certify that, after due search and diligent inquiry, I was unable to find in Salt Lake county, state of Utah, the president of said company, corporation defendant, George Y. Wallace, and I am reliably informed and believe that he is at present out of the state of Utah.

"Fees, $1.20, paid.

"THOMAS P. LEWIS,
"Sheriff.

"By BOWMAN CANNON,
"Deputy Sheriff."

The evidence shows that John Flowers was elected a director in, and secretary of, said corporation defendant, C. Bunting & Co.; Bankers, at its organization in 1892 and actively served as such for about eighteen months following, when he turned the books over to C. Bunting, vice-president and general manager, who took them to Idaho; that he never resigned, was never removed, and his successor was never elected. The evidence simply shows that he ceased to act as said officer; but by reason of article 9 of the articles of incorporation of said corporation defendant, in evidence before us, he remained secretary *de jure*, although another officer was keeping the books of the corporation. Said article 9 is as follows: "The term of office of all directors or other officers, except when a vacancy is filled, and except as provided in section 10, shall be one year and until their successors are elected and qualified." Flowers was a stockholder, as shown

by the books of the defendant corporation, at the time he was elected and at the time he was served with summons. He had qualified and gave bond as said secretary. Under a statute passed by the legislature of Utah in 1896, which was introduced in evidence upon the trial in the lower court it is provided as follows: "The directors or other officers may be removed from office in the manner prescribed by the agreement of incorporation or by the by-laws and all such officers after being qualified to act may continue to act unless removed, until their successors are elected or appointed and qualified, and the sureties on their official bonds shall remain liable thereon until that time." (See Sess. Laws Utah 1896, p. 298, sec. 11.) From the facts and conditions shown, it is my opinion that the service upon said corporation defendant made by the service upon John Flowers, secretary, was sufficient, and gave the Utah court jurisdiction of person and subject matter of the action. Subsection 5 of section 268 (No. 3208) of the Compiled Laws of Utah, in relation to the service of summons, is as follows: "If the suit be against any other corporate body incorporated under the laws of the territory [Utah], service must be made on the president, or chief officer, or his secretary, or clerk, if such officer, secretary or clerk can be found within the district, and if not so found then on any agent of said company, or person having in his charge or custody any property of such company. When the defendant is a foreign corporation, and has any acknowledged agent in this territory, service may be made on such agent, or if no such agent is found, on any person in its employ, or who has any of its property in charge." The statute provided for substituted service. The return of the sheriff showed that the president could not be found, and that John Flowers, on whom service was made, was the secretary of the corporation defendant. This was sufficient. In 19 Encyclopedia of Pleading and Practice, at page 659, it is said: "Where no new officers have been elected or appointed, service on those last in office will bind the corporation, although their term of office may have expired." And at page 661 of the same book it is said: "Sometimes the statutes provide for service upon the secre-

tary, or secretary and treasurer; and, even when there is no statutory provision for service on such officer, he is a proper 'chief officer' on whom the process may be served in the absence of the president." See, also, cases cited in the notes to the texts on both pages. See, also, the following authorities: *City of Ft. Scott v. Schulenberg,* 22 Kan. 648; *Evarts v. Manufacturing Co.,* 20 Conn. 447; *Railroad Co. v. Brown,* 17 Wall. 445, 21 L. ed. 675; *Lewis v. Glenn,* 84 Va. 947, 6 S. E. 866; *Parker v. Hotel Co.,* 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706. The Utah courts had jurisdiction in both cases, and the judgments were valid, and should be recognized here as valid and binding. It is not shown that the judgment in either of those cases, or the proceedings therein, had been annulled, reversed, or modified by the courts of Utah; and, the same being regular upon their face, the court of this state cannot annul them nor disregard them.

The appointment of a receiver by the district court below did not affect the property of the corporation C. Bunting & Co., Bankers, in Utah. Courts of this state cannot extend their jurisdiction into another state by the appointment of a receiver or otherwise. Both of the corporations, C. Bunting & Co., Bankers, and C. Bunting & Co., Merchants, were Utah corporations, and that state was the domicile of both of them. Shares of stock held in either of said corporations could be seized under attachment or execution in Utah, and there alone. Subsection 4 of section 415 (No. 3313) of the Compiled Laws of Utah provides: "Stocks or shares, or interest in stocks or shares, of any corporation or company, must be attached by leaving with the president, or other head of the same, or the secretary, cashier or other managing agent thereof, a copy of the writ, and a notice stating the stock or interest of the defendant is attached in pursuance of such writ." But, aside from the writ of attachment and judgment in the first suit brought by the intervener in Utah, the purchase by it of the 500 shares of pledged stock under the order of sale in the last action brought by it in Utah vested title to said shares of stock in the intervener. The 500 shares of stock in controversy here never came into the hands of the receiver, and the

Idaho court never obtained possession, control, or jurisdiction over them. The judicial proceedings in Utah under which the intervener obtained title to said shares of stock are, under the provisions of the federal constitution, binding upon the courts of this state, and the courts of this state are not authorized to ignore the same in order to advance the interests of resident creditors of this state.

The majority opinion is based upon the erroneous theory that the shares of stock in controversy were merely muniments of title to two-thirds of the corporate property of C. Bunting & Co., merchants, situated in Idaho. It is somewhat remarkable that my associates should fall into this error. The certificate of stock is merely a muniment of title to the shares of stock, not to the corporate property. The certificate is *prima facie* evidence of ownership of the stock named therein, but the owner of stock need not necessarily possess a certificate showing that fact in order to entitle him to the benefits thereof. The owner of shares of stock, whether evidenced by a certificate of stock or not, does not make the shareholder an owner or part owner of the corporate property. This is true where one owns all of the stock of a corporation. (See *Parker v. Hotel Co.,* supra.) Mr. Cook, in his work upon the Law of Stock and Stockholders, at section 5, quotes with approval from the decision of the New York court of appeals in the case of *Plimpton v. Bigelow,* 93 N. Y. 592, as follows: "The right which a shareholder in a corporation has, by reason of his ownership of shares, is a right to participate according to the amount of his stock in the surplus profits of the corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of its debts." And Judge Thompson, in his Commentaries on the Law of Corporations (volume 3, section 3292), says: "It must be kept in mind that when all the shares of stock of a corporation pass into the ownership of one person the corporation is not thereby *ipso facto* dissolved, nor its stock merged, so to speak, so as to make him the legal owner of the tangible property of the corporation." (See same author, sections 5096, 6653, 6654.) It will thus be seen that the passing of all the stock into the hands of one shareholder does not work

a dissolution of the corporation, nor give the sole holder of stock title over the corporate property, which, until a dissolution, judicially determined, remains in the directors of the corporation, who have control over the same. The shares of stock in question were properly in Utah; were never in Idaho at any time during the receivership; could be sold under judicial proceedings in Utah, as the record shows was done; and the said judicial sale, and purchase thereunder, vested title to said 500 shares of stock in the intervener; and said proceedings, until annulled or reversed by the Utah courts, are binding upon the world, including the district court of the fifth judicial district of Idaho in and for Bingham county, and its receiver, and vested in the intervener the rights which C. Bunting & Co., Bankers, had therein at the time the same were pledged to secure the Mc-Cornick & Co. debt—i. e. the right to share in dividends and in the corporate property remaining on a dissolution of the corporation. Courts of this state have no right or authority to seize the corporate property of C. Bunting & Co., Merchants, a solvent corporation, and apply the same to the satisfaction of debts of C. Bunting & Co., Bankers, another and distinct corporation, which is insolvent, without regard to the rights of the owners of the stock in the former corporation; nor can the court seize and sell the corporate property of a corporation for the purpose of satisfying the debts of an insolvent shareholder therein. The receiver is simply the agent of the court, and as such he succeeds to the rights which C. Bunting & Co., bankers, had in and to the 500 shares of stock in controversy, but has and can assert no rights in or thereto which said corporation itself could not assert or maintain if there was no such receivership.

For the reasons stated, I am of the opinion that the judgment of the district court is correct, and that the same should be affirmed.

### ON PETITION FOR REHEARING.

#### (September 25, 1901.)

STOCKSLAGER, J.—This is a petition for a rehearing. The first question presented for consideration is the validity of the service of summons in the case of the Ogden Savings Bank against C. Bunting & Co., bankers, in the Utah court.

The petition for a rehearing presents nothing on that question but what was fully considered on the original hearing, and we know of no reason for changing our views heretofore expressed.

Counsel contend that the person who first seizes stock certificates by writ of attachment acquires a better title to the property which such certificates represent than a court that has had possession of such property or assets long prior to the attachment proceedings. We cannot assent to that proposition. There is no question but that a person who acquires title to paper stock certificates before the property they represent is in the possession of a court of competent jurisdiction in insolvency proceedings acquires a tangible interest in the property. That question is not involved in this case. Here was a corporation organized under the laws of the state of Utah, and doing business exclusively in the state of Idaho. At least two-thirds of its capital stock was in Utah, and all of its property and assets were in Idaho. Its entire capital stock was owned by the banking corporation of C. Bunting & Co. The latter corporation was declared insolvent by the district court of the Fifth judicial district of Idaho, and all of its assets placed in the hands of that court's receiver. The intervener, who is the petitioner, was cognizant of all of those facts and proceedings; and, simply because the statutes of Utah declare that certificates of stock shall be "deemed personal property," it sought to make its claim against said insolvent bank out of 500 paper shares of stock that belonged to said insolvent, and pledged to pay a certain debt due to McCornick & Co. We admit that said shares of stock are personal property, and that the intervener has possession of them. It no doubt may keep them, and realize what it can out of them. But, as it acquired said shares of stock after the property they represent had passed into the hands of a receiver, and after it had subjected itself to the jurisdiction of the court having possession of said property, the courts of this state will not assist it in securing an advantage over other creditors of said insolvent bank. It is suggested that, if the intervener gained an advantage by its vigilance, it is entitled to such advantage. If, in fact, it has secured an advantage, it has it; but the courts of this state will

not assist it, under the facts of this case, in making its supposed advantage valuable, when they would not under like facts, assist a creditor resident of Idaho in making an advantage thus obtained valuable. Said stock certificates were pledged as security for the balance due to McCornick & Co. It had been pledged for that purpose, and no other; and, after the property said certificate represented had passed into the hands of a receiver, the Ogden Savings Bank could not tack its claim against the insolvent bank onto said pledged certificates, and make them a pledge for its debt. Counsel suggest it is a strange and foreign doctrine that stock certificates are not worth the paper upon which they are written. In the original opinion in this case it was suggested that certificates of stock were valueless without the property they represented, and we think that statement is true. If they are, why is the intervener here seeking to get possession of the property that its 500 shares of stock represent? The contention of counsel for the intervener would lead to the conclusion that a creditor of a corporation cannot attach and realize his debt out of the assets or property of the corporation, but must attach such corporation's stock certificates.

We do not deny the right of a creditor, not a resident of this state, to bring his suit in another state against one who has been declared an insolvent by an Idaho court, and make his claim out of property that he may find in such other state. Counsel contend that the intervener has done that very thing. If so, why is their client here? The fact is they have not recovered their client's debt, and it comes into the courts of this state for assistance. They recognize the fact that said 500 shares of stock are of no value unless the courts of this state give them value by doing an injustice to other creditors who have filed their claims in good faith, in the court that has possession of said property.

Some stress is laid upon the point that the intervener is a stockholder in a corporation that has no creditors (the merchants corporation), but the fact that said corporation was owned by and was a part of the assets of the banking corporation at the time it was declared an insolvent is apparently over-

looked or lost sight of. According to the theory of counsel, if all of the assets of an insolvent corporation consisted of another corporation, and the property of the latter corporation in one state and the stock certificates in another state, some small creditor in the states where the certificates were situated could bring suit, levy on such certificates, procure title thereto under execution sale, and then go to the court of the state that had possession of all of the property, and demand and receive the same. We cannot indorse that theory. The fifth district court of this state, having taken said property into its custody prior to the time the intervener obtained title to said stock certificates (conceding that it did do so), will hold said property, and distribute its proceeds to the creditors who have filed and proved their claims in said court. The assignee of McCornick & Co. may recover the balance due on the McCornick & Co. debt, but under the facts of this case the assignee cannot tack its claim onto said pledged stock, and make such stock security for the payment of a debt for which the stock was not pledged.

Counsel say they have relied upon property rights which they had secured through courts of competent jurisdiction in the state of Utah. If they have made a mistake as to the law, it may be unfortunate; but as they sought to realize nearly double the amount of their claim against the insolvent, and failed, it would have been better for them to have come into the court that had possession of assets of the insolvent, and share with all other creditors. Counsel refer to unjust discrimination, and suggest that this court will not permit it. That is just what this court will not permit, and is what our decision prevents. It is also suggested that there is no disposition on the part of the intervener to secure money largely in excess of the amount due it. By its complaint in intervention it is shown that its entire claim against said insolvent estate is about $23,000, including the McCornick & Co. claim, and it asks to have turned over to it as its property assets of the alleged value of $40,000. And as a matter of fact the intervener bid in said five hundred shares of stock for $100. Thus it is shown that for five hundred shares, for which it paid but $100, it asks a court of equity to deliver to it prop-

erty of the value of $40,000, which property had been in the hands of a receiver long prior to the time that it became the owner of said shares of stock. The intervener had the right to come into the courts of Idaho, and share in the assets of said insolvent bank with all other creditors. It declined to do so, and took its chance of making nearly double the amount of its claim by proceedings in the courts of Utah. The courts of Utah have granted it all the relief it asked, and still it is not satisfied. It desires the courts of Idaho to assist it in a manner that they would decline to assist any creditor, resident in Idaho, in recovering a claim against said insolvent bank. That they will not do, and the petition for a rehearing is denied.

Sullivan, J., concurs.

QUARLES, C. J.—I have carefully read the opinion of my associates denying a rehearing in this case. That opinion is interesting. I am constrained to believe that my associates do not properly apprehend the facts material to a correct decision of this case, and that they have mistaken the law applicable thereto; wherefore, and for the reasons stated in the dissenting opinion heretofore filed by me, I am of the opinion that a rehearing should be granted.