(No. 6328. July 23, 1936.)

KATHERINE MASON and T. R. MASON, Her Husband, Respondents, v. JOHN PELKES, EVELYN H. TREI-NIES and SUNSHINE MINING COMPANY, Appellants.

[59 Pac. (2d) 1087.]

H. J. Hull, for Appellants Pelkes and Treinies.

James E. Gyde, James E. Gyde, Jr., and Jess B. Hawley, for Appellant Sunshine Mining Company.

Walter H. Hanson, F. C. Keane, Lester F. Harrison and Cox & Ware, for Respondents.

MORGAN, J.—This suit was commenced August 4, 1934, by Katherine Mason and T. R. Mason, her husband, against John Pelkes, Evelyn H. Treinies, Frances Thinnes and Pierre Thinnes, her husband, and Sunshine Mining Company, to procure a decree adjudging 15,299 shares of capital stock of the mining company to have been held by Pelkes in trust for Katherine Mason prior to his transfer of it to Treinies, Thinnes and his wife; that the transfers were fraudulent and without consideration and in violation of the trust; that the defendants, other than the mining company, be enjoined from selling or otherwise disposing of the stock, and that the mining company be enjoined from permitting a transfer thereof and from paying any dividends thereon pending final determination of the suit; also for an accounting for dividends theretofore paid. A temporary restraining order and injunction *pendente lite* were granted.

The case was dismissed as to Thinnes and wife before trial. The mining company, having been served with summons, failed to appear within the time prescribed by statute for appearance and its default was entered August 29, 1934. It moved to vacate the default, and for an order permitting it to answer and cross-complain. The motion was overruled and a trial of the issues framed by the complaint and the answers of defendants, Pelkes and Treinies, resulted in a decree wherein a certificate for 16,000 shares of stock in Sunshine Mining Company, standing of record in the name of the latter, was erroneously referred to and described as certificate No. 1755–A. The parties litigant stipulated that wherever in the pleadings, proceedings, orders and decree reference has been made to certificate No. 1755–A the number of said certificate shall be corrected, changed and construed to be No. 2777–A. The stipulation is approved and it is directed that the findings of fact, conclusions of law

and decree be amended accordingly and the certificate will be hereinafter referred to as No. 2777–A.

By the decree there was awarded to Katherine Mason 7,649 shares of stock evidenced by certificate No. 2777–A, held by Treinies, and she and her husband were adjudged to be the owners of the dividends accrued and accruing thereon since August 4, 1934. Treinies was ordered, directed and required, within ten days, to indorse and deliver to the mining company said certificate held by her. The mining company was ordered, directed and required to cancel the certificate of record, and in lieu thereof to issue and deliver to Katherine Mason a certificate for 7,649 shares of said stock and to pay to plaintiffs the dividends accrued and accruing thereon since August 4, 1934; also to deliver to Treinies, or her assigns, a certificate for the residue of the stock evidenced by certificate No. 2777–A, and to pay to her, or her assigns, the dividends thereon accrued and accruing since August 4, 1934. The decree further provided that if Treinies failed to indorse and surrender the certificate within ten days the mining company should cancel it of record and issue and deliver a certificate for 7,649 shares of said stock to Katherine Mason, and pay to plaintiffs the dividends accrued and accruing thereon since August 4, 1934; also it should issue and deliver a certificate to Treinies, or her assigns, for the residue of the stock evidenced by certificate No. 2777–A and pay to her, or her assigns, the dividends accrued and accruing thereon since August 4, 1934, upon the indorsement and surrender of the certificate held by her. Treinies, Pelkes, Sunshine Mining Company and their attorneys were enjoined from transferring certificate No. 2777–A and from disposing of it, or of any of the stock evidenced by it, otherwise than as required by the decree, and the mining company was enjoined from paying to Treinies, or her assigns, any dividends on the stock until she had complied with the decree. It was further decreed that the claims of plaintiffs were not barred by laches nor by the statutes of limitation; that the temporary restraining order and injunction *pendente lite*, issued on plaintiffs' application, were valid and that the bonds given for the procurement thereof were discharged;

also that the defendants, and each of them and their attorneys, be and they were enjoined from commencing or taking any further proceedings in the courts of Washington in the matter of the estate of Amelia Pelkes, deceased, or in any court with reference to the subject-matter of this action, or with reference to the relief given by the decree, except by appeal or application to this court.

The mining company appealed from the decree, and complains of the action of the court denying its motion to set aside the default and refusing to permit it to answer and cross-complain. Defendants, Pelkes and Treinies, appealed from the decree, and from the whole thereof, and plaintiffs cross-appealed from the portions of the decree wherein it was ordered that the mining company issue and deliver to defendant, Treinies, a certificate of stock and pay her, or her assigns, dividends thereon. The effect of the cross-appeal is to call in question the portions of the decree which awarded less than 15,299 shares of stock to Katherine Mason, together with the dividends accrued and accruing thereon since August 4, 1934, to her and her husband, and for an accounting and judgment for those theretofore paid. The appeal of the mining company will be considered separately from the others.

The sheriff's return, filed August 10, 1934, shows he served the summons on Sunshine Mining Company by delivering a copy to it, to which was attached a copy of the complaint in the suit, to J. B. Cox, the assistant treasurer of said corporation, personally, in Shoshone county, on August 4, 1934.

The mining company is a Washington corporation which had conformed to the laws of Idaho entitling it to transact business here. I. C. A., sec. 29–502, requires such a corporation to designate an agent in the county in which is situated its principal place of business in Idaho, upon whom process issued by authority of or under any law of this state may be served. Section 5–507 provides: "The summons must be served by delivering a copy thereof as follows: . . . . If the suit is against a foreign corporation . . . . doing business and having a managing or business agent, cash-

ier or secretary within this state, to such agent, cashier or secretary, or to any station, ticket or other agent of said corporation, transacting business thereof, in the county where the action is commenced, and if there is no such agent in said county then service may be made upon any such agent in any other county.''

The mining company gave notice that it would, on June 24, 1935, move the court to vacate and set aside the default made and entered against it on August 29, 1934, and for permission to file an answer and cross-complaint. The motion was made and was, on June 25, 1935, denied. June 24, 1935, the sheriff filed an amended return in which he certified he personally served the summons in this suit ''upon Sunshine Mining Company, a corporation, one of the within named defendants, by delivering to and leaving with one J. B. Cox, known to me to be the designated statutory agent, director and assistant secretary or assistant treasurer of said corporation, personally in the County of Shoshone, State of Idaho, on the 4th day of August, A. D. 1934, a copy of said summons, attached to which was a copy of the complaint referred to in said summons.''

The mining company contends the clerk was without jurisdiction to enter the default because the sheriff's return, on file when it was entered, failed to show service of the summons on it. This contention is based on the theory that the assistant treasurer of a foreign corporation is not such an officer or agent that delivery of a copy of the summons to him constitutes service on it. Assuming this contention to be correct it is not available to the mining company, for the amended return, filed prior to the decision on the motion, shows service on its designated agent. Jurisdiction to enter a default is based on the fact of service, not on the return which is evidence of it. (*Call v. Rocky Mountain Bell Tel. Co.*, 16 Ida. 551, 102 Pac. 146, 133 Am. St. 135; *Blandy v. Modern Box Mfg. Co.*, 40 Ida. 356, 232 Pac. 1095.)

There is no contention that the mining company was not served with summons as by law provided, nor that its failure to appear, answer and cross-complain within the

time prescribed by statute was due to mistake, inadvertence, surprise or excusable neglect. Its failure to do so was intentional. The record discloses that, in failing to respond to the summons, it proceeded on the theory that it was a mere stakeholder of the stock and unpaid dividends in controversy between the other parties litigant, and that it had no interest in the result of the litigation. While the suit was pending the market value of the stock greatly increased and the mining company appears to have been actuated in its desire to answer and cross-complain, after its default had been entered, by a fear that it might become involved in litigation growing out of the changing value of the stock while it held it pending final determination of the claims to it of the other parties litigant.

Our statute (sec. 5–905) providing for setting aside defaults does not contemplate that such relief be granted to a defendant who has knowingly and intentionally failed to appear and answer within the time prescribed by law, and who has thereafter changed his mind because of changing circumstances. The order denying the motion to set aside the default and permit the mining company to answer and cross-complain was not erroneous.

The mining company insists the decree granted relief against it in excess of that demanded in the complaint in violation of sec. 7–704, which provides: ''The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the case made by the complaint embraced within the issue.'' That statutory provision has been frequently applied in this state and relief not prayed for has been held not allowable against a defendant in default for failure to answer.

The relief sought against the mining company, shown by the prayer of the complaint, is that it be restrained and enjoined, pending a final determination of the suit, from permitting a transfer of the shares of stock involved and from paying dividends thereon, and that it show cause why it should not be so restrained and enjoined; that it, to-

gether with other defendants, account to plaintiffs for any and all dividends which had been paid on the stock in controversy; also "For a decree of this court ordering and directing the defendant Sunshine Mining Company to cancel said certificates now standing of record in the names of the defendants Frances Thinnes and Evelyn H. Treinies, and that said company be directed to issue to plaintiffs a certificate in lieu thereof for 15,299 shares of said capital stock. For such other and further relief as to the court may seem just and equitable."

The provisions of the decree, pertinent to the question now before us, have heretofore been stated. The relief granted against the mining company is not in excess of that prayed for in the complaint, unless it be in that particular wherein the decree enjoins the company and its attorneys, together with the answering defendants and their attorneys, from commencing or taking any further proceedings in the courts of Washington in the matter of the estate of Amelia Pelkes, deceased, or in any court with reference to the subject-matter of this action, or with reference to the relief given by the decree, except by appeal or application to this court. Assuming, but not deciding, that the provision of the decree last above referred to is in excess of the relief prayed for in the complaint, when attempted to be applied to the mining company, only the portion of it so attempting to grant relief not prayed for would be void, and that only as against the defaulting defendant.

It does not appear, and has not been urged or even suggested, that the mining company has suffered hardship or inconvenience by reason of the injunction against commencing proceedings inconsistent with the terms of the decree, and the incorporation therein of that provision, even if void as against it, does not constitute ground for reversal. That provision was intended to prevent further interference with the courts of Idaho in proceeding with this suit, and will be *functus officio* when the case is disposed of. The order denying the motion to set aside the default and to permit the mining company to file an answer and cross-complaint is affirmed.

John Pelkes and the mother of respondent, Katherine Mason, were married about 1889. At that time Katherine was 8 or 9 years old, and she lived with her mother and stepfather until she grew to womanhood and was married. From the time of the marriage of Mrs. Mason's mother to her stepfather until the controversy arose which resulted in this litigation Pelkes and Mrs. Mason were very friendly toward each other, and each treated the other as if the relationship between them was by blood instead of by marriage. At the time of, and for many years after their marriage, Pelkes and his wife resided in Idaho where, by their joint efforts, they accumulated property of considerable value. A number of years prior to the death of Mrs. Pelkes, which occurred in 1922, she and her husband removed to Spokane, Washington, where she died and where they resided at the time of her death.

Mrs. Mason testified she had a conversation with her mother, in the fall or winter of 1918, at which appellant, Pelkes, was present. Her testimony is, in part, as follows:

"Well, mother told me that she and John were getting along in years, and they had made their wills, and they wanted me to be familiar with them in case anything should happen to them so I would know how to proceed. And mother was three years older than John and so she always felt that she would die first, and having poor health. So she said that if she died first, why, I was to get half of the property, but if John died first she was to get all of the property, and then at her death I was to get it. And in John's will she said they also stipulated that when he died in case mother had died also, why, I was to get it all excepting five thousand dollars that he wanted to divide among some nieces and a favorite sister of his in the old country."

Mrs. Pelkes' will was probated in the Superior Court of Spokane County, Washington. It was dated and executed September 25, 1918, and after providing for the payment of debts and funeral expenses, contained the following provisions:

"II

"I give, devise and bequeath unto my beloved husband, John Pelkes, and to my beloved daughter, Katherine Mason, of Kellogg, Idaho, share and share alike, all my property, real, personal and mixed, wheresoever situate, to have and to hold the same in equal shares.

"III

"I hereby nominate and appoint my said beloved husband, John Pelkes, executor of this my last will and testament, and it is my will, and I hereby order and direct, that no bonds or other securities shall be required of him and to fully execute this my last will and distribute the estate as herein provided without any application to any court for leave or confirmation and without any intervention of any court unless the same be expressly required by law.

"IN WITNESS WHEREOF," etc.

Mrs. Mason testified that after her mother's funeral appellant, Pelkes, brought the will to her. She further testified:

"I went over to the window and opened it and read it. And I said: 'Why, John, this will isn't made out the way Mama intended it to be.' And he said: 'Why not?' And I said: 'Well, the way it reads I am only entitled to a fourth of the property.' And he says: 'Oh, my goodness! no; that wasn't the way she intended it at all.' And I had to read it over and explain to him how it was, and he says: 'Well, that doesn't make any difference; you are going to get your half.'"

Pelkes and Mrs. Mason, the day following the funeral, took the will to the courthouse in Spokane county, Washington, to have it probated. They were there informed it would be necessary for them to have the assistance of a lawyer and they employed Attorney Kinsell to assist in probating the will. Mr. Kinsell testified:

"I don't remember who spoke of it first,—whether it was Mrs. Mason or Mr. Pelkes, or whether I mentioned the fact that the property under the will was to be divided three-fourths to Mr. Pelkes and one-fourth to Katherine Mason. One-half of Amelia Pelkes' estate was disposed of under the will, and which one spoke of it first I don't remember,

but both said during the conversation that there had been a mistake in the will, and that it was intended by the wife and mother—Amelia Pelkes—to make an equal distribution or division of all of the property that belonged to the community composed of Mr. Pelkes and his wife Amelia; and I said: 'Well, we can do one of two things. You can either have the estate administered—probated—the way it is, and three-fourths distributed to Mr. Pelkes and one-fourth to Katherine Mason, or you can enter into an agreement to have all of the property equally divided, or a share of the estate, a one-fourth interest, can be conveyed by Mr. Pelkes to Mrs. Mason, and the decree of distribution cover the entire estate by equal distribution.' This was the agreement between them and both understood it, and both stated that that was the intention of Mrs. Pelkes, and there was no objection, and that they were the two—the only heirs that were concerned.''

With respect to the mining stock belonging to the estate, and the reason it was not included in the inventory, he testified:

''After they had given me the description of the property that appears in the general inventory, I asked them if that were all of the estate, if that were all of the property that Amelia Pelkes owned at the time of her death, in conjunction with her husband, and—well, Mrs. Mason says: 'Well, what about the mining stock, John?' And he says: 'Yes, there's a lot of mining stock but it hasn't any value.' And I said: 'Well, the mining stock is a part of the estate; if she had an interest in it at the time of her death the mining stock is a part of the estate and should be included in the inventory.' Well, Mr. Pelkes says: 'It hasn't any value.' Well, I says, 'some day it may have value and you should include it in the inventory because if it should have value then by your probate proceedings, if it is included in the administration, you will establish title so that there will be no question as to who owns that stock, and if it has no value, why, it won't be necessary to put any value on it, but the stock exists and should be included in the estate. And Mr. Pelkes says: 'Well—speaking to Mrs. Mason—'this

stock has no value but if it ever has any value I will give you your half.' And she seemed to be more or less satisfied with that. I wasn't, however. I thought my duty wasn't complete until the mining stock was made a part of it, even if it had no value, but he wouldn't give me the description, so I was unable to put it into the inventory.''

The will of Amelia Pelkes was admitted to probate in the Superior Court of Spokane County, Washington, May 1, 1922. An inventory of the estate was filed in which no mining stock was included. August 8, 1922, an order of solvency was made and entered by the judge of that court in which it was found that the estate was of the reasonable value of $27,350 and that it was free and clear of all incumbrances excepting unpaid claims and liens in the sum of approximately $895. That document contains the following:

''It is therefore ordered and decreed, that said estate is solvent and is entitled to be closed under the terms of the will of the late Amelia Pelkes as a non-intervention will without the further interference or intervention of this court and it is further ordered that said executor shall pay said claims and expenses of administration and distribute said property, as provided by the terms of said will without further intervention of said court.''

Thereafter such proceedings were had that a decree of distribution was entered August 9, 1923, wherein the following appears:

''IT IS HEREBY ORDERED, ADJUDGED AND DECREED, That the residue of said estate of Amelia Pelkes, deceased, hereinafter particularly described, and now remaining in the hands of said executor and any other property not now known or described, which may belong to said estate, or in which the said estate may have any interest be and the same is hereby distributed to and vested in the following persons in the following portions, to-wit: John Pelkes, husband, Spokane, Washington, an undivided one-half interest thereof; Katherine Mason, daughter, Kellogg, Idaho, an undivided one-half interest thereof.

''By this decree the said John Pelkes becomes the owner of an undivided three-fourths interest in the property de-

scribed in the inventories on file herein, or the proceeds thereof, and the said Katherine Mason becomes the owner of the remaining one-fourth interest, undivided, in said property, the said John Pelkes being the owner of a community or undivided one-half interest of said property at the time of the death of his wife, the said Amelia Pelkes.

"The following is a particular description of said residue of said estate referred to in this decree, and of which distribution is ordered, adjudged and decreed." (Then follows a description of property in which no mining stock is mentioned.)

Shortly after the death of his wife Pelkes removed from Spokane, Washington, to Kellogg, Idaho, where he resided, for a while, with Mrs. Mason and her husband. Together Pelkes and Mrs. Mason rented a safety deposit box wherein they kept their valuable papers derived from the estate of Amelia Pelkes, including certificates evidencing the shares of stock here in controversy. After the decree of distribution was entered Pelkes and Mrs. Mason divided the property which they received from the estate each taking possession of approximately one-half thereof, except the mining stock. With respect to this division Mrs. Mason testified, in part:

"Well, he said: 'You get a pencil and paper and take down a list of these notes and mortgages, and when the interest is due, and when the notes are due—' . . . . and he said 'I have decided to give you the Byrne note and the Interstate Telephone stock, because it will be easiest for you to handle.' And I said: 'Aren't you going to give me the mining stock now?' And he said: 'No.' We had adopted a baby in January of that year, and I was so very busy with the baby; and he said: 'You don't want to bother with mining stock.' He said: 'You couldn't attend to stockholders' meetings and all that.' He says: 'You let me attend to that; I will attend to that for you.' So I said: 'All right.'"

Included in the mining stock was 30,598 shares in Sunshine Mining Company which, prior to her death, was the community property of Amelia Pelkes and John Pelkes, her

husband. One-half of that stock was subject to her testamentary disposition and the other half became the sole property of her husband, by operation of law.

Mrs. Mason testified to conversations between her and Pelkes wherein he admitted her ownership of an interest in the mining stock; also that when the first dividend was declared on the Sunshine Mining Company stock, May 20, 1927, he asked her to permit him to retain her part of it because he needed it, and that she consented for him to retain it and keep it as long as he needed it, but told him to keep track of the dividends as they were paid, and of assessments which he had to pay on other mining stock so she would not be bothered with it. A conversation testified to by Mrs. Mason as having taken place at the time Pelkes removed from the Mason home was as follows:

"He gave me the key to the box and told me he would take his things out. And I said: 'Well, John, don't you think you ought to give me my mining stock now? and he says: 'Now, Kate, you know if I give it to you the Doctor (Mrs. Mason's husband) will just have you sell it'; and he says: 'You let me keep it, and I'll make you a lot of money on it.'"

Pelkes, in his testimony, denied some of the statements attributed to him, and others said to have been made in his presence, with respect to the estate and to a division of the property thereof. His testimony was to the effect that it was agreed between Mrs. Mason and him that she should have one-half of the property, except the mining stock, instead of one-fourth thereof which she was entitled to under the terms of the will; that he was to have the other half of said property and all the mining stock, and that the division was made between them in conformity to that agreement; that he thereafter retained the mining stock as his own and held no part of it in trust for Mrs. Mason.

Pelkes was 83 years old at the time of the trial of this suit in the district court in June, 1935. For several years prior to the trial he had been in ill-health and at times required the care of others. In November, 1923, his nephew, Pierre Thinnes and Frances, his wife, came to this country

from Europe and settled in Kellogg, and in February, 1930, Pelkes gave them 12,000 shares of Sunshine Mining Company stock which, at that time, had a market value of about $3.50 a share.

Early in 1931 Pelkes and Mrs. Mason met, in California, appellant Evelyn H. Treinies, a niece of his deceased wife and a cousin of Mrs. Mason. She was at that time about 40 years of age, and he had not seen her since she was a child. During the time the three were together appellant, Treinies, showed great affection for Pelkes, kissed him frequently and made a proposal of marriage to him. She continued her attentions to him until the time of the trial, and took care of him during some of his attacks of illness. November 8, 1933, appellants, Pelkes and Treinies, entered into a contract wherein it was agreed he should assign to her 16,000 shares of the capital stock of Sunshine Mining Company and, in consideration thereof, she should support, maintain and care for him to the best of her ability during the remainder of his life. Pelkes testified the stock had been delivered to her and she had possession of it. Commencement of this suit followed receipt of information, by respondents, he had disposed of the stock.

After the entry of the decree of distribution in the estate of Amelia Pelkes, deceased, in the Superior Court of Spokane County, Washington, August 9, 1923, Pelkes and Mrs. Mason looked upon and treated the probate proceedings as closed, until the commencement of this suit, and on December 19, 1934, when Mrs. Mason filed a petition, in that court and proceeding, wherein she alleged, among other things, that certain property belonging to the estate, including 30,598 shares of the capital stock of Sunshine Mining Company, had not been inventoried or probated, and that it was an asset belonging to the estate and subject to being probated. She further alleged that Pelkes, as executor, had wasted or embezzled said property and had committed a fraud upon the estate, and that he was incompetent to act, and asked that a citation issue requiring him to show cause why he should not be removed as executor and why letters of administration should not be issued to some

competent person. Accompanying the petition of Mrs. Mason was a petition executed by one Easter that letters of administration with will annexed be issued to him.

The citation was issued and Pelkes filed a return and a cross-petition wherein he alleged, among other things, sole ownership in himself, by agreement with Mrs. Mason, of all the mining stock derived from the estate, and the pendency of the suit in Idaho, and he prayed that a temporary restraining order be entered restraining Mrs. Mason from further prosecution of this case; that the restraining order be made permanent upon the conclusion of the litigation in Washington; that he be adjudged to have fully accounted for all the property of the estate of Amelia Pelkes, deceased, and that he had delivered to Katherine Mason all the property of such estate to which she was entitled either by the terms of the will or by the voluntary settlement entered into between Mrs. Mason and him.

February 2, 1935, the judge of the District Court of the First Judicial District of Idaho, wherein this suit was pending, being disqualified to act therein, by order designated and called Honorable Gillies D. Hodge, Judge of the Second Judicial District, to hear and determine it. Respondent, T. R. Mason, who was not a party to the proceeding in Washington in the matter of the estate of Amelia Pelkes, deceased, and who was personally interested in this suit to the extent of his community interest in several thousands of dollars in dividends which had been declared, and in dividends in future to be declared, on the mining stock involved herein, and who was a resident of Idaho and had not been served with the restraining order issued by the Washington court, nor had he, in any way, submitted himself to the jurisdiction thereof, filed a petition in this suit wherein he prayed for an order of the district court requiring John Pelkes, Evelyn H. Treinies and Katherine Mason, and their agents and attorneys, to show cause why they should not be enjoined and restrained from further proceeding with the litigation pending in Washington in the matter of the estate of Amelia Pelkes, deceased. In filing that petition, and in the proceedings had pursuant to it, he

was represented by counsel other than the attorneys who had appeared in the litigation.

May 21, 1935, Judge Hodge, acting as judge for the first judicial district, made and entered an order that Pelkes and Treinies and Katherine Mason, together with their agents and attorneys, naming them, appear before him, in chambers, in Wallace, Shoshone County, at a time designated, then and there to show cause why they should not be restrained and enjoined during the pendency of this suit, and until the final determination thereof, or until the further order of the court, from attempting to further prosecute, or do anything in connection with, the matter pending in the Washington court, in the estate of Amelia Pelkes, deceased. Said parties and their agents and attorneys were ordered to desist and refrain from taking any further proceedings in said cause until further order of the court. While the order was in full force and effect, and was being obeyed by Mrs. Mason and her attorneys, appellants, Pelkes and Treinies, and their attorneys, in violation of it, prosecuted the proceeding pending in the Washington court to final order, which was dated May 31, 1935.

May 29, 1935, Judge Hodge filed a declaration of his disqualification to try the case, and June 10, 1935, Honorable Miles S. Johnson, Judge of the Tenth Judicial District, was designated to try it. He thereafter proceeded with the trial and September 30, 1935, entered the decree heretofore mentioned wherein was contained the injunctive order restraining and prohibiting Pelkes and Treinies from commencing or taking further proceedings with respect to the subject-matter of the suit in the courts of Washington or elsewhere except by appeal or application to this court. October 14, 1935, Pelkes and Treinies, filed their notice of appeal to this court in this case, and thereafter, in violation of the injunctive provision in Judge Johnson's decree, they filed in the Superior Court of Washington, for Spokane County, a complaint, verified October 16, 1935, against Katherine Mason and T. R. Mason, and Lester S. Harrison, Walter H. Hanson, F. C. Keane and Richard S. Munter, their attorneys, and Sunshine Mining Company, wherein they prayed that

the defendants, other than the mining company, be enjoined and perpetually restrained from asserting or claiming any right, title or interest in or to the shares of stock involved in this suit; from applying for, obtaining, using, or instituting any process, proceeding, suit or action for the purpose of enforcing the decree of the Idaho court or any of its provisions; from endeavoring in any manner or through any process, proceeding, suit or action to compel the defendant, Sunshine Mining Company, to comply with the terms of the Idaho decree, and from attempting to dissuade the Sunshine Mining Company from, or influencing it against, plaintiffs' rights in the shares of stock in litigation; they further prayed that the mining company be enjoined and restrained from delivering any of the stock in litigation, or any dividends accrued or to accrue, to the defendants named in said complaint, or any of them, and that it be required to recognize plaintiffs in said suit in the Washington court as the sole and only owners of the shares and dividends involved.

Respondents herein have moved to strike the brief of appellants, Pelkes and Treinies, on the ground that it does not conform to the rules of this court. The briefs filed by said appellants do not conform exactly to our rules, but the departure is not sufficiently grave to justify granting the motion and it is, therefore, denied.

Respondents have also moved to dismiss the appeal of said appellants on the ground that they are in contempt of court by their violation of Judge Hodge's order restraining them from proceeding in the Washington court in the matter of the estate of Amelia Pelkes, deceased, and by the failure and refusal of appellant, Treinies, to obey the decree of the district court requiring her to surrender, for cancellation, a certificate of stock of Sunshine Mining Company, and by commencement of action, in the Washington court, by appellants, Pelkes and Treinies, after having filed their notice of appeal, in violation of the decree appealed from, for the purpose of procuring an injunction against the other parties litigant from attempting to bring about enforcement of the decree of the district court.

These appellants attack Judge Hodge's order to show cause and restraining order on the ground that the action wherein it was issued was pending in the first judicial district and the order was signed by the judge in the Second Judicial District of Idaho. They cite *Callahan v. Dunn,* 30 Ida. 225, 164 Pac. 356, and *Greene v. Edgington,* 37 Ida. 1, 214 Pac. 751. These cases defeat, rather than support, their contention. They also attack the affidavit pursuant to which the order was entered. We find it to be sufficient.

No formal accusation of contempt of court has been made against appellants, Pelkes, Treinies or their attorneys, and they insist they cannot be punished unless and until they have been charged with contempt and adjudged to be guilty thereof. They also insist that, even if they had been adjudged to be guilty of contempt of court, appellants could not be punished therefor by denial of their constitutional and statutory rights to appeal.

As we view this phase of the case we do not deem it necessary to decide whether a formal accusation and adjudication of contempt of court is necessary in order to justify the refusal to grant to a litigant, who has intentionally obstructed the administration of justice in the cause in which he seeks relief, the ordinary remedies provided by law, nor whether, in any case, the right of appeal may be denied because of such misconduct.

Respondents have not assigned as error the order permitting appellant, Pelkes, to amend his answer and therein plead and rely on the order of the Washington court procured in violation and defiance of Judge Hodge's restraining order, nor have they assigned as error the order settling the transcript, made over their objection, based on the misconduct of appellants, Pelkes and Treinies and their attorneys. If we have power to deny the right of appeal to a party litigant because of his misconduct, whereby justice has been obstructed, it is a matter . within our discretion. It is quite clear the steps taken by appellants, Pelkes and Treinies, in violation of injunctive orders of the district judges, were taken pursuant to advice given them by their attorneys and, assuming we have power to do so, which we

do not decide, we are not disposed to visit upon these litigants the harsh penalty of dismissing their appeal.

W. G. Graves, an attorney at law residing in Washington, and a member of the firm of Graves, Kizer & Graves, of Spokane, made an affidavit in opposition to the objection of respondents to settlement of the transcript herein, in which he stated, among other facts, that he drafted the complaint in the action filed in the Washington court wherein injunctive relief was sought. In his affidavit Mr. Graves states:

"I repeat that I, and I, alone, am responsible for every allegation contained in that complaint, and I assert in the most solemn manner of which I am capable that there is not an allegation contained in that complaint that was untrue, contemptuous or offensive in any manner, either to this Court or to any person. The utmost that can be charged against the complaint is that it was mistaken in law upon which it was drafted. Certainly it contains nothing but that which I believed to be necessary or germane to the theory of law upon which the complaint proceeded."

After the filing of that complaint and the issuance of a citation to show cause why an injunction *pendente lite* should not issue as prayed for, which was served on some of the defendants therein named, the mining company filed a *supersedeas* bond and deposited the stock in controversy, evidenced by certificates thereof, in escrow, whereby the decree appealed from was superseded. Thereafter Pelkes and Treinies dismissed their action in the Washington court, the apparent purpose of which was to, in effect, supersede the decree of the Idaho court without conforming to the laws of Idaho relating to *supersedeas*.

The appeal will not be dismissed, but we are not to be understood as entertaining the view that blame does not attach to those who are responsible for the violation of the injunctive orders of the district court.

We invite attention to the fact that the statutes of Idaho and our rules do not contemplate the admission of nonresidents of this state to the bar. (I. C. A., secs. 3–101, 3–104; rule 2 of the Rules of the Supreme Court of Idaho; rule 2 of the Rules of the Supreme Court and Board of

Commissioners of the Idaho State Bar.) The privilege of appearing as counsel in our courts is granted to nonresident attorneys, not as a right, but as a courtesy, and it may be said to the credit of the members of the legal profession residing in other states, who have been permitted to appear before our courts, that it has been indeed seldom the confidence thus reposed in them has been violated.

The order of the Washington court, in the matter of the estate of Amelia Pelkes, deceased, dated May 31, 1935, is relied on by appellants, Pelkes, and Treinies, as *res judicata* of the matter here in litigation.

In his findings of fact the judge of that court, referring to the agreement whereby the estate was divided between the husband and daughter of deceased, found:

"In making this agreement, both parties had in mind the shares of mining stock belonging to the estate, including the shares in litigation, which had not been inventoried or administered on, and both intended and agreed that all those shares should go to and be received by John Pelkes in his sole right as a part of the distributive share of the estate to which he was entitled."

He further found the partition agreement had been fully performed so far as the division was concerned; that Mrs. Mason had received from Pelkes the property to which she was entitled, and thereafter held and enjoyed it in her sole right, and that Pelkes had taken the remainder of the estate and held and disposed of it as his own. Mrs. Mason was directed to file a receipt, set out in the order, for the property received by her, in which was recited:

"This receipt is a release of all right, title or interest of Katherine Mason in and to all other property of the estate of Amelia Pelkes, deceased, whether derived from the will of Amelia Pelkes, from the decree of distribution entered in the matter of her estate, or from the agreement between Katherine Mason and Pelkes as executor whereby there was given to her the above described property in lieu of her undivided interest in all the property of the estate."

It was further provided that:

"In the event of her failure to comply, this order shall stand in lieu of a receipt in those terms filed by her. It is found correct, and shall have the same effect as a receipt signed by her and filed herein and approved by me."
She did not sign the receipt.

The order does not specifically adjudge that the mining stock involved in this suit was the property of Pelkes in his own right, nor that he held it, or did not hold it, in trust for Mrs. Mason. The form of receipt incorporated in it is uncertain, in that it purports to evidence a release by Mrs. Mason of claim to all property of the estate not delivered to her, whether derived from the will of her mother, the decree of distribution, or from the agreement between her and Pelkes, as executor. If she has any claim to this property by agreement with Pelkes he was not acting in his capacity as executor when it was made, but in his individual capacity. However, when the order is read with the findings of fact it appears to have been the intention of the judge of the Washington court to adjudicate and dispose of the matter then in litigation in this suit in the District Court of the First Judicial District of Idaho, and we will proceed on the theory· that the order, if the judge who made it had jurisdiction to do so, did decide and dispose of the matter in issue in this case.

Article 4, sec. 1 of the Constitution of the United States requires that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, but this provision does not preclude inquiry into the jurisdiction of the court in which the judgment was rendered, or into the facts necessary to give such jurisdiction; nor are the courts of a state required to give full faith and credit to a judgment rendered by a court of another state which had no jurisdiction of the subject-matter or of the parties. (*Thum v. Pyke,* 8 Ida. 11, 66 Pac. 157; *Thompson v. Whitman,* 18 Wall. 457, 21 L. ed. 897; *Reynolds v. Stockton,* 140 U. S. 254, 11 Sup. Ct. 773, 35 L. ed. 464; *Pendleton v. Russell,* 144 U. S. 640, 12 Sup. Ct. 743, 36 L. ed. 574.)

It was stipulated at the trial that the district court, and this court on appeal, may take judicial notice of the statutes of Washington and of the decisions of its supreme court. I. C. A., sec. 16–101, lists the matters of which courts in Idaho take judicial notice, and neither the statutes of other states, nor the decisions of their courts, are included in the list. Sections 16–304, 16–305 and 16–306 of our code prescribe how the laws of other states, and of foreign countries, may be proved. This court has repeatedly held it will not take judicial notice of the laws of another state, and that, in the absence of pleading and proof of what such laws are, they will be presumed to be the same as are our own. (*Moore v. Pooley,* 17 Ida. 57, 104 Pac. 898; *Maloney v. Winston Bros. Co.,* (on rehearing) 18 Ida. 757, 111 Pac. 1086; *Douglas v. Douglas,* 22 Ida. 336, 125 Pac. 796; *Mechanics & Metals Nat. Bank v. Pingree,* 40 Ida. 118, 232 Pac. 5; *State v. Martinez,* 43 Ida. 180, 250 Pac. 239; *Cummings v. Lowe,* 52 Ida. 1, 10 Pac. (2d) 1059; *Kleinschmidt v. Scribner,* 54 Ida. 185, 30 Pac. (2d) 362.)

Certain constitutional and statutory provisions of Washington were alleged by appellant, Pelkes, and the existence thereof was admitted by respondents in their pleadings. These quoted provisions are held to state the laws of Washington, so far as they are applicable to this case, but with respect to matters to which they are not applicable the laws of that state will be assumed to be the same as those of Idaho.

A Washington constitutional provision, so alleged and admitted, provides ''The superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title or possession of real property, . . . . and in all other cases in which the demand or the value of the property in controversy amounts to one hundred dollars, . . . . of all matters of probate, . . . . and for such special cases and proceedings as are not otherwise provided for. . . . . '' It appears from the Washington statutes, pleaded and admitted, that superior courts have original jurisdiction of all matters of probate and, in the exercise thereof, ''shall have power to probate or refuse to probate

wills, appoint administrators, executors . . . . and administer and settle all such estates, award processes and cause to come before them all persons whom they may deem it necessary to examine, and order and cause to be issued all such writs as may be proper or necessary, and to do all things proper or incident to the exercise of such jurisdiction.'' The Washington law, so shown, further provides for closing the estate and discharging the executor or administrator upon production of receipts from beneficiaries or distributees for their portions thereof, and grants to the court authority to make partition, distribution and settlement of all estates. The law of Washington, in the particulars pleaded and admitted, grants to the superior courts of that state the same powers, in probate matters, as are granted to probate courts in Idaho by our laws.

That the Superior Court of Spokane County, Washington, had jurisdiction to probate the estate of Amelia Pelkes, deceased, is not questioned. After admitting the will to probate and proceeding therewith to and including the entry of decree of distribution, whereby all property remaining in the hands of the executor was distributed to the beneficiaries named in the will, in undivided interests, and after more than 11 years had elapsed from the date of the decree of distribution, and while a suit was pending in Idaho to establish a trust with respect to a portion of the property derived from the estate, did that court have and retain jurisdiction to try and determine the question as to whether the trust existed?

The record does not disclose what the law of Washington is with respect to this question. Proceeding on the theory that it is the same as in Idaho, we hold the Washington court did not have jurisdiction to try and determine the question as to whether Pelkes held the stock involved in this suit in trust for Mrs. Mason, for the following reasons:

1. The entire estate of Amelia Pelkes, deceased, was devised and bequeathed to her husband and daughter by a nonintervention will, and after the order of solvency and decree of distribution were entered no other or further order of the court was necessary to pass title to them nor to place

them in possession and enjoyment of the property, to do with as they saw fit, and the superior court, acting in probate, had fully performed its functions and exhausted its powers with respect to it;

2. The probate of an estate is a proceeding *in rem.* (*Harkness v. Utah Power & Light Co.,* 49 Ida. 756, 291 Pac. 1051; *Abels v. Frey,* 126 Cal. App. 48, 14 Pac. (2d) 594; Bancroft's Probate Practice, vol. 1, p. 81, sec. 40.) The *res* had already been distributed and was no longer a part, or asset, of the estate and the probate court had no further jurisdiction thereof.

The mining stock here in question was duly and regularly distributed by the decree of the Washington court sitting in probate. That decree, as heretofore pointed out, after referring to the property therein described, included and distributed ''any other property not now known or described, which may belong to said estate, or in which the said estate may have any interest.''

The Sunshine Mining Company stock here in controversy, aggregating 30,598 shares, belonged to the estate at the time of the decree of distribution and was treated by the executor and beneficiary, Pelkes, and Mrs. Mason, the other beneficiary named in the will, as a part of the estate so distributed. They thereafter brought all personal property derived from the estate, including the certificates of shares of that mining stock, to Idaho and entered into an agreement for the division thereof and it was divided. The only disagreement between them is Pelkes insists it was agreed he was to have all the mining stock while Mrs. Mason insists the agreement was she was to have half of it. The distribution of property which both parties claim was made, being one-fourth to Mrs. Mason and three-fourths to Pelkes, included that made under the omnibus clause of the decree which distributed ''any other property not now known or described,'' and disposed of the entire estate, including the mining stock, and both parties so understood and agreed. No controversy existed, or now exists, between the parties over the distribution of the property, and the only dispute is as to the terms of the agreement between them, after the

distribution was ordered and made, whereby it was divided. The mining stock, having been distributed, was no longer property of the estate and the Washington court, sitting in probate, did not have jurisdiction of it.

3. A decree in probate, distributing an estate, is a final adjudication, subject to appeal, of the rights of the distributees to receive the property awarded to them, but a court of probate has not jurisdiction to decide questions of title, to the property distributed, arising out of contracts between the distributees after the decree is entered.

This court said in *Connolly v. Probate Court*, 25 Ida. 35, 136 Pac. 205:

"Said probate court having had jurisdiction of the pro-bating of said estate with the power to determine who were the heirs of said Corbett, deceased, and who were entitled to succeed to his estate, and what their respective interests were, and having determined these matters, and having entered its decree of distribution therein, and the decree not having been appealed from within the time provided by law for an appeal, the decree becomes conclusive as to the rights of all heirs and claimants to said estate."

The court further said in that case:

"The judgment of the probate court in probate matters is made appealable by the provisions of sec. 4831, Rev. Codes. (I. C. A., sec. 11–401.) The probate court is not given jurisdiction, under the laws of this state, to set aside the decree of distribution entered upon a full hearing of which the entire world had legal notice. That proposition was fully considered in *Donovan v. Miller, supra*. (12 Ida. 600, 88 Pac. 82, 10 Ann. Cas. 444, 9 L. R. A., N. S., 524.) While the probate court, under the provisions of sec. 21, art. 5 of the constitution, is made a court of record and is given original jurisdiction in all matters of probate, settlement of estates of deceased persons and the appointment of guardians, its orders and judgments in regard to those matters cannot be attacked collaterally, but may be corrected on appeal. The constitution does not make probate courts courts of equity in which equitable relief may be granted long after the time for appeal has passed." (See,

also, *Parr v. Reyman*, 215 Cal. 616, 12 Pac. (2d) 440; *In re Thompson's Estate*, 110 Wash. 635, 188 Pac. 784.)

In the case last above cited a daughter of deceased had assigned to her father, who was administrator of her mother's estate, all her interest therein, he agreeing to pay her, upon distribution of the estate, an amount equal to what her distributive share would have been had the assignment not been made. She appealed from the decree of distribution and the Supreme Court of Washington held her appeal could not be maintained, saying: "Her contract with Thompson provided for the compensation she should receive. It was a private matter, and the probate court was neither bound nor entitled to in any manner consider it. Her remedy is solely on her contract."

Superior courts in Washington have jurisdiction in equity, as shown by the record, which probate courts in Idaho have not, but it does not appear that a superior court, in a probate proceeding, has equitable power to relieve a party from a decree of distribution which has become final and fully executed, nor to make and enter an order that property thereby distributed had, or had not, thereafter, by agreement between the parties, been placed and held in trust by one of them for the use and benefit of the other.

Assuming the laws of Washington are the same as those of Idaho with respect to this matter, we hold that the Superior Court of Spokane County was without jurisdiction to make and enter its order determining whether or not a trust existed and who was the owner of the stock in controversy, and that it is not *res judicata* of the matter presented to the district court, and here, for determination.

This conclusion makes unnecessary a discussion of the effect, on the jurisdiction of the Washington court, of the pendency of litigation in Idaho, involving the existence of the trust.

 The trial judge found Pelkes and Mrs. Mason divided all the property derived from the estate, including the stocks, between them and agreed her interest in the mining stocks should be held by him, as trustee, to be transferred to her on demand if and when said stocks, or

any of them, should become valuable, and to account to her for dividends thereon. He further found Pelkes did not purchase from Mrs. Mason, or otherwise acquire, her interest in the mining stock involved herein, but held the same in trust for her. These findings are fully supported by the evidence and are approved.

On the question of the extent of Mrs. Mason's interest in the stock the judge found:

"That evidence admitted without objection established that John Pelkes and Katherine Mason entered into an arrangement for the equal division of the entire property of the marital community composed of John Pelkes and Amelia Pelkes, and that after the entry of the decree of distribution they so divided the property, including the mining stocks, but that the parties were acting under a mistake of fact in assuming that the intention of Amelia Pelkes could be established in any other way than by the terms of the plain and unambiguous will, and the evidence of said arrangement and division is incompetent; . . . . ''

The above quoted finding is evidently based on a mistaken theory that the intention of Amelia Pelkes as to the disposition of her property is material to a decision of the case, and that the beneficiaries of her will were bound by the terms of it in their division of the estate between them.

There is no question as to what the will provided, nor that, according to its terms, one-fourth of the entire community property of John and Amelia Pelkes was to go to Katherine Mason and three-fourths thereof was to go to Pelkes. Nor is there any question that it was distributed to them, according to the terms of the will, in undivided interests. That the property so distributed was thereafter divided by them is not in dispute, and it is not contended that the division was made by mistake as to the wishes of Amelia Pelkes, nor is it material if the rules of evidence were not followed by them in ascertaining what her wishes were. The division was not a judicial proceeding, nor was it in any way governed by judicial procedure.

There is no contention that fraud was practiced or that mistake occurred in making the division; the controversy is

as to the terms of the agreement, voluntarily entered into between the parties with full knowledge of the facts, by which the division was made. Respondents' contention is that 15,299 shares of Sunshine Mining Company stock were, by the agreement, held in trust for Mrs. Mason by Pelkes and were by him transferred in violation of the trust to Treinies, who took them with knowledge of it. This contention is sustained by the evidence. Appellants, other than the mining company, contend that said stock, and all of it, became the property of Pelkes in the division of the estate of Amelia Pelkes, deceased, and was not held in trust by him for Mrs. Mason. This contention is not sustained by the evidence.

Conclusions of law, consistent with the findings, were made and the decree, heretofore referred to, was entered.

The case is remanded to the district court with direction to amend the findings of fact and conclusions of law to conform to the views herein expressed, and to amend and modify the decree and therein award to Katherine Mason 15,299 shares of the capital stock of Sunshine Mining Company in controversy herein, and adjudge respondents to be the owners of the dividends accrued and accruing thereon since August 4, 1934, and require appellants, other than Sunshine Mining Company, to account for all dividends collected by them on said stock, and award judgment against them, severally, in favor of respondents, for any balance found to be due on account thereof. Costs are awarded to respondents.

Givens, C. J., and Budge, Holden and Ailshie, JJ., concur.

Petition for rehearing denied.