TREINIES et al. v. SUNSHINE MINING CO. et al.

No. 8730.

Circuit Court of Appeals, Ninth Circuit.

Nov. 10, 1938.

Rehearing Denied Nov. 29, 1938.

652

Hamlet P. Dodd, Frank R. Jeffrey, and Thomas E. Meade, all of Seattle, Wash., for appellants.

Nat U. Brown and C. W. Halverson, both of Yakima, Wash., for appellee Sunshine Mining Co.

John P. Gray, of Coeur d'Alene, Idaho, Richard S. Munter, of Spokane, Wash., Lester S. Harrison, of Kellogg, Idaho, Walter H. Hanson and F. C. Keane, both

of Wallace, Idaho, and E. A. Cox, of Lewiston, Idaho, for other appellees.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

This was a suit in equity begun by a bill of interpleader, duly verified, filed in the District Court of the United States for the District of Idaho by Sunshine Mining Company, a corporation (hereafter called the company), against Evelyn H. Treinies; Katherine Mason and T. R. Mason, her husband; Seattle-First National Bank, a national banking association located in Washington, as administrator with the will annexed of the estate of John Pelkes, deceased; J. C. Cheney, whom a State court of Washington, in a suit by Pelkes against the Masons and the company, had appointed as receiver; and six other defendants.[1] The bill sought a determination of the respective rights and interests of the named defendants in and to 15,299 shares of the company's capital stock and dividends accrued and accruing thereon. From a decree in favor of the Masons,[2] Treinies, the administrator and the receiver have appealed.

The first question is whether the District Court had jurisdiction of the case.

Section 24(26) of the Judicial Code, 28 U.S.C.A. § 41(26), provides that the district courts of the United States shall have original jurisdiction:

"(a) Of suits in equity begun by bills of interpleader or bills in the nature of bills of interpleader duly verified, filed by any * * * corporation * * * having in * * * its custody or possession money or property of the value of $500 or more, or having issued a * * * certificate * * * or other instrument of the value or amount of $500 or more * * * or being under any obligation written or unwritten to the amount of $500 or more, if—

"(i) Two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any * * * certificate * * * or other instrument, or arising by virtue of any such obligation; and

"(ii) The complainant (a) has deposited such money or property or has paid the amount * * * due under such obligation into the registry of the court, there to abide the judgment of the court. * * *

"Such a suit in equity may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

"(b) Such a suit may be brought in the district court of the district in which one or more of such claimants resides or reside.

"(c) * * * [Said] court shall have power to issue its process for all such claimants and to issue an order of injunction against each of them, enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any United States court on account of such money or property or on such instrument or obligation until the further order of the court. * * *

"(d) Said court shall hear and determine the cause and shall discharge the complainant from further liability; and shall make the injunction permanent and enter all such other orders and decrees as may be necessary or convenient to carry out and enforce the same."

The stock in controversy had a value of more than $500. Prior to filing its bill, the company had issued certificates for the stock and was under an obligation to pay the rightful owner thereof accrued and accruing dividends thereon. Accrued dividends, at the time of filing the bill, amounted to more than $500. The company, at that time, paid the then accrued dividends into the registry of the court, there to abide the judgment of the court. Dividends subsequently accruing were likewise so paid. Also, while the suit was pending, certificates representing the stock in controversy were deposited in the registry of the court. Appellants (Treinies, the administrator and the receiver) claimed the stock and dividends adversely to the Masons. The Masons were citizens and residents of Idaho. Appellants were citizens and residents of Washington. Clearly, therefore, the court had jurisdiction.

Answers were filed by all the named defendants. The Masons claimed that Katherine Mason was entitled to the 15,299

---

[1] The named defendants were the real parties in interest. Being the only claimants of the stock or dividends, they were the only necessary parties defendant, and, for present purposes, may be regarded as the only defendants.

[2] Sunshine Mining Co. v. Treinies, D. C., 19 F.Supp. 587.

shares of stock, and that they (Katherine Mason and T. R. Mason) were entitled to all dividends thereon. They also claimed a judgment lien on 701 other shares of the company's capital stock which, they alleged, were the property of Treinies, and on the dividends thereon. Treinies and the administrator claimed that Treinies was entitled to all the stock mentioned—the 15,299 shares and the 701 shares—and all dividends thereon, and denied that the Masons had a lien on any of the stock or any of the dividends. The receiver claimed that he was entitled to all the stock mentioned and all dividends thereon.

With respect to the 15,299 shares of stock and dividends thereon, all issues raised or attempted to be raised in this interpleader suit had, prior to the commencement thereof, been litigated and finally determined in a suit by the Masons against Pelkes, Treinies and the company in a State court of Idaho[3] (hereafter called the Idaho court). That suit (hereafter called the Idaho suit) was commenced on August 4, 1934. A decree was entered therein on September 30, 1935. All parties appealed. On July 23, 1936, the Supreme Court of Idaho remanded the case,[4] with directions to amend and modify the decree so as to award the 15,299 shares of stock to Katherine Mason, and to adjudge her and her husband to be the owners of all dividends[5] accrued and accruing thereon after August 4, 1934. The decree was so amended and modified and, thereupon, on August 18, 1936, was duly entered as the Idaho court's final decree. Certiorari to review that decree (hereafter called the Idaho decree) was denied on January 11, 1937.[6] This suit was commenced on March 17, 1937.

Treinies and the Masons were parties to the Idaho suit. All rights which, in the interpleader suit, were claimed by the administrator and the receiver, or either of them, were claimed under Pelkes, who was a party to the Idaho suit. Therefore, if the Idaho decree was valid, all parties to the interpleader suit were concluded thereby. The question now to be decided is whether, as claimed by the Masons, the Idaho decree

was valid, or whether, as claimed by appellants, it was void for want of jurisdiction.

The Idaho court was a court of general jurisdiction at law and in equity.[7] The Masons (plaintiffs in the Idaho suit) invoked that jurisdiction. The defendants (Pelkes, Treinies and the company) appeared generally in the Idaho suit, thereby submitting themselves to the jurisdiction of the Idaho court. The Idaho suit was one to determine rights in personal property, namely, the 15,299 shares of stock and dividends thereon. More specifically, it was a suit to enforce a trust agreement between Pelkes and Katherine Mason, whereby Pelkes had agreed to hold the stock and dividends in trust for Katherine Mason. This agreement was made in Idaho. Both parties to the agreement and all persons having or claiming any interest in the stock or dividends, including the company which issued the stock and owed the dividends, were before the Idaho court. It is clear, therefore, that the Idaho court had jurisdiction of the Idaho suit.

The fact that the company which issued the stock was a Washington corporation is quite immaterial. Because of that fact, it is true, the stock had a situs in Washington (Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 13, 20 S.Ct. 559, 44 L. Ed. 647), but that was not its only situs. Direction der Disconto-Gesellschaft v. United States Steel Corp., D.C., 300 F. 741, 746, affirmed in 267 U.S. 22, 45 S.Ct. 207, 69 L. Ed. 495. Its other situs was in Idaho, where the Masons resided and all adverse claimants of the stock appeared voluntarily and litigated their claims.

The stock in controversy was formerly the property of John Pelkes and his wife, Amelia Pelkes, residents of Washington. Amelia Pelkes died testate on April 24, 1922. Her will was admitted to probate in a State court of Washington. Being community property,[8] the stock became, for purposes of administration, a part of her estate.[9] In the interpleader suit, it was alleged by appellants that the stock had not been distributed, but was still in custody

---

[3] The District Court of the State of Idaho in and for Shoshone County.

[4] Mason v. Pelkes, 57 Idaho 10, 59 P. 2d 1087.

[5] The stock was treated as the wife's separate property, the dividends as community property. Idaho Code, 1932, §§ 31-903, 31-907.

[6] Pelkes v. Mason, 299 U.S. 615, 57 S. Ct. 319, 81 L.Ed. 453.

[7] Constitution of Idaho, Art. 5, § 20; Idaho Code, 1932, § 1-705.

[8] Remington's Revised Statutes, § 1342.

[9] Id., §§ 6890-6892.

of the Washington court, and that, therefore, the Idaho court had no jurisdiction to entertain the Idaho suit. The Masons denied these allegations and alleged that the stock was distributed on August 9, 1923, eleven years before the Idaho suit was commenced. That issue—as to when the stock was distributed—had been raised by Pelkes in the Idaho suit. The Idaho court was empowered to determine that issue and did determine it in favor of the Masons, holding that the stock was distributed on August 9, 1923. The issue thus determined could not be relitigated in the interpleader suit.

How, if at all, the Idaho court's jurisdiction would have been affected by the fact —if it were a fact—that the stock had not been distributed when the Idaho suit was commenced, we need not and do not decide.

On May 31, 1935, while the Idaho suit was pending, the Washington court rendered a judgment to the effect that Pelkes was the owner of the stock and dividends in question, and that the Masons had no right, title or interest therein. In the interpleader suit, appellants pleaded the Washington judgment and alleged that the Idaho court was thereby divested of whatever jurisdiction it might otherwise have had of the Idaho suit. The Masons denied this and asserted that the Washington judgment was itself void for want of jurisdiction. That issue—as to whether the Washington court had jurisdiction to render the judgment relied on by appellants—had also been raised in the Idaho suit. The Idaho court was empowered to determine that issue (Pendleton v. Russell, 144 U.S. 640, 644, 12 S.Ct. 743, 36 L.Ed. 574) and did determine it in favor of the Masons, holding the Washington judgment void for want of jurisdiction. The issue thus determined could not be relitigated in the interpleader suit.

Whether the issues determined by the Idaho decree were rightly or wrongly determined, is no longer open to inquiry. Having been rendered by a court which had jurisdiction to render it, and having long since become final, that decree, even though erroneous, is valid and conclusive on the parties thereto and all persons claiming under them. Roche v. McDonald, 275 U.S. 449, 454, 48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141.

The Masons claimed a judgment lien on the 701 shares of stock owned by Treinies and on the dividends thereon, arising from a levy of execution issued under the Idaho decree. The District Court's decree recognized the lien and directed enforcement thereof. The sole ground on which appellants attack this part of the District Court's decree is that the Idaho decree was void for want of jurisdiction. That ground has been considered and shown to be untenable.

The District Court's decree awarded the company its costs and expenses (including attorneys' fees) in the aggregate sum of $3,397.88. The award was proper (Massachusetts Mutual Life Ins. Co. v. Morris, 9 Cir., 61 F.2d 104) and, we think, adequate. The company and other appellees will, of course, recover their costs on appeal.

Decree affirmed.